UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ANTHONY BUSH, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUST-OLEUM CORPORATION,<br><br>Defendant. | Case No. 20-cv-03268-LB<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 29 |

**INTRODUCTION**

This is a consumer-products mislabeling case. On behalf of a class of California consumers, the plaintiff challenges defendant Rust-Oleum's labeling of its KRUD KUTTER cleaning products as "non-toxic" and "earth friendly," contending that the products in fact can cause harm to humans, animals, and the environment, in violation of California consumer-protection laws.[1] The complaint has five claims: (1) unlawful, unfair, and fraudulent business practices under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–08; (2) deceptive advertising under the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (3) deceptive practices under the Consumer Legal Remedies Ac ("CLRA"), Cal. Civ. Code §§ 1750–84; (4) breach of

---

[1] First Amend. Compl. – ECF No. 26 at 3 (¶ 2); *see* Opp'ns – ECF Nos. 31 at 5, 33 at 21–22 (limiting case to a California class). Citations refer to the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 20-cv-03268-LB

express warranties; and (5) unjust enrichment.[2] Rust-Oleum moved to dismiss under (1) Federal Rule of Civil Procedure 12(b)(6) on the grounds that the labels are not deceptive and the plaintiff did not plead fraud with particularity under Rule 9(b), and (2) Rule 12(b)(1) for lack of standing because the labels are accurate and the plaintiff cannot challenge products that he did not purchase.[3] Because the plaintiff plausibly alleged that the labels are misleading to reasonable consumers and because the misrepresentations are similar, the court denies the motion to dismiss.

**STATEMENT**

Rust-Oleum sells household-cleaning products under the brand name KRUD KUTTER. Plaintiff Anthony Bush bought the KRUD KUTTER Original Cleaner and Degreaser and KRUD KRUTTER Tough Task Remover.[4] He challenges as inaccurate the representations on the front label that the products are "non-toxic" and "earth friendly."[5] These are the front labels:

 

---

[2] FAC – ECF No. 26 at 31–43 (¶¶ 66–161).

[3] Mot. – ECF No. 29 at 14–31.

[4] FAC – ECF No. 26 at 4 (¶ 10).

[5] *Id.*

1 The labels also have the front-label warning "CAUTION: EYE AND SKIN IRRITANT. Read
2 back." The plaintiff includes 13 other KRUD KRUTTER products in his claims (for a total of 15
3 accused products). All have similar front-label representations of "non-toxic" and "earth friendly"
4 and contain the same warning.[6] Rust-Oleum submitted the full labels for the purchased products,
5 including the back labels, which disclose the products' ingredients, warn that the product contains
6 eye and skin irritants, and give First Aid instructions to flush with water for 15 minutes after
7 contact with the eyes or skin.[7] To support the contention that the products are neither non-toxic
8 nor earth friendly, the complaint describes the products' ingredients (listed on the label) and
9 references (and attaches) the products' Safety Data Sheets, which describe the risks of harm
10 attached to ingredients (for example, "causes serious eye damage," "causes skin irritation," and
11 "may be harmful if inhaled . . . or swallowed").[8]

12 The plaintiff alleges that Rust-Oleum's labeling the products as non-toxic and earth friendly is
13 deceptive "greenwashing," meaning, claiming that the cleaning products are safe and non-toxic
14 when, in fact, they can cause harm to humans, animals, or the environment.[9] To support this
15 allegation, the plaintiff cites the Green Guides, which were created by the Federal Trade
16 Commission ("FTC") to help companies avoid making misleading and deceptive claims.[10]
17 According to the Green Guides, "[a] non-toxic claim likely conveys that a product, package, or
18 service is non-toxic both for humans and for the environment generally," and "[i]t is deceptive to
19 misrepresent, directly or by implication, that a product, package or service is non-toxic. Non-toxic
20 claims should be clearly and prominently qualified to the extent necessary to avoid deception.[11]

---

[6] Labels, Ex. 1 to *id.* – ECF No. 26-1.

[7] Labels, Ex. A to Req. for Jud. Notice ("RJN") – ECF No. 29-2. The court grants the motion for judicial notice generally and can consider the labels and the Green Guide under the incorporation-by-reference doctrine. Fed. R. Evid. 201(b); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[8] FAC – ECF No. 26 at 10–11 (¶¶ 31–34),12–25 (¶¶ 35–38) & Product Safety Sheets, Ex. 2 to *id.* – ECF No. 26-2.

[9] *Id.* at 5 (¶ 15).

[10] *Id*. at 5–6 (¶ 16)

[11] *Id*. at 6 (¶ 16) (citing 16 C.F.R. § 260.10(a–b)).

The Green Guides offer examples of "non-toxic" marketing claims to "provide the Commission's views on how reasonable consumers likely interpret certain claims."[12] For example, marketing a cleaning product as "essentially non-toxic" or "practically non-toxic" "likely conveys that the product does not pose any risk to humans or the environment, including household pets. If the cleaning product poses no risks to humans but is toxic to the environment, the claims would be deceptive.[13]

The U.S. Environmental Protection Agency ("EPA") commented on the Green Guides, stating that marketers will "rarely, if ever, be able to adequately qualify and substantiate such a claim of 'non-toxic' in a manner that will be clearly understood by consumers."[14] It explained:

> [A] "non-toxic" claim conveys that a product is non-toxic for both humans and for the environment generally. Demonstrating a lack of toxicity in a generic sense involves testing for a broad array of endpoints (e.g. acute toxicity, carcinogenicity and other chronic effects, developmental and reproductive toxicity, neurotoxicity, sensitization, etc.) across a variety of species. It is highly unlikely that the typical consumer product will have been subjected to this degree of testing with a resulting finding of "no adverse effect" for each of the endpoints evaluated.[15]

The FDA did not address the term "earth friendly," but it did consider "eco-friendly." "The brand name 'Eco-Friendly' likely conveys that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, the use of such a brand name is deceptive."[16]

---

[12] *Id.* at 6 (¶¶ 16–17).

[13] *Id.* at 6–7 (¶ 19) (citing 16 C.F.R § 260.10).

[14] *Id.* (¶ 17) (citing EPA Comments on Proposed Revisions to Green Guides (2010) (available at https://www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmentalmarketing-claims-project-no.p954501-00288%C2%A0/00288-57070.pdf).

[15] *Id.*

[16] *Id.* at 7–8 (¶ 22).

ORDER – No. 20-cv-03268-LB    4

The complaint also alleges that the products violate the labeling requirements in the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261–1278, and the Code of Federal Regulations, which require that product labels must warn of eye and skin hazards (as the products do here) and not feature "words, statements, designs, or other graphic material that in any manner negates or disclaims any of the label statements required by the act." 16 C.F.R. §§ 1500.3(b)(14), 1500.122.[17]

The complaint alleges that reasonable consumers would interpret the claims "non-toxic" and "earth friendly" to mean that the products "do not pose any risk of harm to humans, animals, and/or the environment."[18]

The court held a hearing on Rust-Oleum's motion on December 3, 2020. All parties consented to magistrate-judge jurisdiction.[19]

**STANDARD OF REVIEW**

**1. Standing**

A complaint must contain a short and plain statement of the ground for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). Standing pertains to the court's subject-matter jurisdiction and thus is raised in a Rule 12(b)(1) motion. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).

A defendant's Rule 12(b)(1) jurisdictional attack can be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). This is a facial attack. The court thus "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most

---

[17] *Id.* at 25–26 (¶¶ 39–44), 37–38 (¶¶ 104–11).
[18] *Id.* at 10 (¶ 29).
[19] Consents – ECF Nos. 6, 17.

1  favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.
2  2003).

### 2. Rules 12(b)(6) and 9(b)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

Fraud allegations elicit a more demanding standard. "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Like the basic "notice pleading" demands of Rule 8, Rule 9(b) assures that defendants are given fair notice of the charges against them. *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular

misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

### 3. Leave to Amend

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

### ANALYSIS

Rust-Oleum moved to dismiss under (1) Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim and failure to comply with the CLRA's notice provisions and (2) Rule 12(b)(1) for lack of standing because the labels are accurate and the plaintiff cannot challenge products that he did not purchase. The court denies the motion to dismiss. The plaintiff plausibly pleaded that that a reasonable consumer is likely to be deceived by the labels, complied with the CLRA's notice provisions, otherwise pleaded fraud with particularity and the other claims plausibly, and has standing to challenge the accused products because the misrepresentations are sufficiently similar.

### 1. Rules 12(b)(6) and 9(b)

Rust-Oleum contends that the labels are not deceptive as a matter of law, the plaintiff did not comply with the CLRA's notice provisions, the plaintiff did not plead fraud with particularity under Rule 9(b), and the plaintiff failed to state claims for a breach of express warranty or unjust enrichment.

#### 1.1 Fact Issues Preclude Dismissal on the Ground that the Claims are not Deceptive

Claims under the CLRA, FAL, and UCL are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [plaintiffs] must show that 'members of the public are likely to be deceived.'"

*Id.* (cleaned up). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]" because [it] requires 'consideration and weighing of evidence from both sides.'" *Id.* at 138–39 (cleaned up) (quoting *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007)). "The California Supreme Court has recognized that these laws prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Id.* (cleaned up) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332–33 (1998).

Rust-Oleum contends that a consumer could not reasonably believe the plaintiff's definition of non-toxic — the product did not pose any risk to humans, animals, or the environment — because that definition is contrary to the dictionary definition of toxic and the FDC's guidance. The dictionary definition of toxic is "containing or being poisonous materials especially when capable of causing death or serious debilitation." The FDC's guidance in the Green Guide states that a "product" is non-toxic (not that the specific ingredients are non-toxic, regardless of concentration) and that a non-toxic product could contain a toxic substance at a level that is not harmful to humans or the environment." [20] This, Rust-Oleum argues, is like *Rugg v. Johnson & Johnson*, where the court addressed a challenge to the representation " "hypoallergenic" on labels of baby products.[21] No. 17-cv-05010-BLF, 2018 WL 3023493 at *1 (N.D. Cal. June 18, 2018). There, the plaintiffs contended that consumers believed that "hypoallergenic" meant "does not contain any skin sensitizers," and the accused products allegedly contained known skin sensitizers. *Id.* at *2. The defendant countered that the dictionary definition of "hypoallergenic" was "having little likelihood of causing an allergic response." *Id.* at *3. The court dismissed the consumer-

---

[20] Mot. – ECF No. 29 at 15–16 (quoting FAC – ECF No. 26 at 10 (¶ 29); citing 16 C.F.R. § 260.10; quoting "Toxic", *Merriam-Webster* Online Dictionary (2020) (https:/www.merriam-webster.com/dictionary/toxic); and quoting The Green Guides, Ex. C to RJN – ECF No. 29-4 at 149).

[21] *Id.* at 14–15.

ORDER – No. 20-cv-03268-LB          8

1  protection, unjust-enrichment, and breach-of-warranty claims on the ground that the plaintiff's
2  definition of "hypoallergenic" — given the dictionary definitions — was implausible (and, for the
3  consumer-protection claims) failed the reasonable-consumer test. *Id.* at *3–4.

4      *Rugg* does not compel dismissal of the case at the pleadings stage. For one, "toxic" has other
5  definitions, including "harmful."[22] The plaintiff cites other evidence — including the FTC's and
6  EPA's evaluation of the term to support their allegations of consumer confusion. The
7  representation "non-toxic" is coupled with "Earth Friendly," a term evaluated by the FTC, at least
8  relatedly, through its consideration of the term "eco-friendly." Moreover, Rust-Oleum
9  characterizes the plaintiff's claim as a challenge to the ingredients in the product (which may be
10 toxic), regardless of whether the product itself is toxic and causes harm.[23] The plaintiff counter
11 that the ingredients are relevant to whether the product poses a risk of harm.[24] These are not
12 questions that can be resolved on a motion to dismiss. *Kellman v. Whole Foods Mkt. Inc.*, 313 F.
13 Supp. 1031, 1051 (N.D. Cal. 2018) (representations about concentration of skin sensitizers that
14 may cause sensitization reactions in consumers precludes dismissal of claims about how a
15 reasonable consumer would interpret hypoallergenic).

16     Citing *Cheslow v. Ghirardelli Chocolate Co.*, Rust-Oleum also contends that the labels
17 accurately disclose the products' ingredients and that a consumer cannot disregard an ingredient
18 list when an advertisement or label is not otherwise deceptive.[25] 445 F. Supp. 3d 8, 20 (N.D. Cal.
19 2020) (addressing a consumer challenge to whether Ghirardelli Chocolate's marketing of white
20 baking chips misleading suggested that the chips were white chocolate). Consumers are not
21 expected to look beyond front-label representations to back-label disclosures of ingredients, but
22 still, they cannot disregard ingredient lists altogether. *Id.* Applying that standard here, an
23 ingredient list disclosing the composition of candy baking products is qualitatively different than
24 the more opaque disclosure of ingredients in a cleaning product. Rust-Oleum's argument thus does

---

[22] Opp'n – ECF No. 33 at 12.
[23] Mot. – ECF No. 29 at 16.
[24] *Id.* at 13.
[25] *Id.*

ORDER – No. 20-cv-03268-LB      9

not change the conclusion that the issue cannot be resolved on a motion to dismiss. *Williams*, 552 F.3d at 138–39.

Rust-Oleum also contends that the products are not deceptive because they disclose what "earth friendly" means in a back-label disclosure that the products "contain[] no inorganic phosphates, hazardous solvent, or environmentally harmful surfactants."[26] The court cannot conclude as a matter of law that the disclosure is "clear and prominent qualifying language" that qualifies the front-label claims and prevents deception about the asserted environmental benefit. 16 C.F.R. § 260.4(c); *Cheslow*, 445 F. Supp. 3d at 20.

In sum, the plaintiff plausibly pleaded — with the requisite particularity required by Rule 9(b) — deception under the "reasonable consumer test." The court cannot conclude at the pleadings stage that the labels are not deceptive as a matter of law.

### 1.2   CLRA Notice

Rust-Oleum contended that the plaintiff did not file the 30-day notice required by the CLRA before a plaintiff can file a lawsuit for damages.[27] Cal. Civ. Code § 1782(a). On this record, the plaintiff's submissions established that it complied with the CLRA's notice requirement.

### 1.3   Breach of Express Warranty

"To prevail on a breach of express warranty claim, Plaintiffs must prove [the following]: (1) 'the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899–900 (N.D. Cal. 2012) (quoting *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)). "Proof of reliance on specific promises is not required." *Id.* (citing *Weinstat*, 180 Cal. App. 4th at 1227). A label or representation that a product is "hypoallergenic" can constitute an express warranty for purposes of a breach-of-warranty claim. *Kellman*, 313 F. Supp. 3d at 1052 (citing *Sebastian v. Kimberly-Clark Corp.*, No. 17cv442-WQH-JMA, 2017 WL 6497675, at *8 (S.D. Cal. Dec. 18, 2017) (in the

---

[26] *Id.* at 18.

[27] Opp'n – ECF No. 33 at 17–18.

context of a breach-of-warranty claim, "Plaintiffs' allegations regarding Defendant's use of the terms 'natural,' 'gentle,' and 'hypoallergenic' are sufficient to demonstrate that Defendants made 'affirmations of fact or promises or provided a description of its goods'") (cleaned up)).

The plaintiff plausibly states a claim. First, the product labels promised "non-toxic" and "earth friendly." Second, the plaintiff plausibly pleaded that the promise was a basis for the purchase and the products were in fact not "non-toxic" or "earth friendly."

### 1.4 Unjust Enrichment

Rust-Oleum's argument is that the plaintiff did not allege an actionable misrepresentation or omission.[28] The claim survives based on the court's holding that the plaintiff plausibly pleaded a misrepresentation. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (citing *Astiana v. Hain Celestial Group*, 783 F.3d 753, 762 (9th Cir. 2015)).

### 2. Standing

Rust-Oleum contends that the plaintiff lacks standing because the labels are accurate, he cannot seek injunctive relief, and he cannot pursue claims for products he did not purchase.[29]

First, under the analysis above, at the pleadings stage, the plaintiff has standing to pursue the claims because he plausibly pleaded deception.

Second, he has standing to pursue injunctive relief because he plausibly pleaded future harm by alleging that he will be unable to purchase the products in the future, even though he would like to, based on his inability to rely on the labels' claims.[30] *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966–70 (9th Cir. 2018).

Third, the plaintiff has standing to contest the 13 products that he did not purchase because the front-label representations about "non-toxic" and "earth friendly" are substantially similarly. *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868–72 (N.D. Cal. 2012), No. 3:12-cv-

---

[28] Mot. – ECF No. 29 at 21.

[29] *Id.* at 23–31.

[30] FAC – ECF No. 26 at 4 (¶ 11), 27 (¶ 52).

United States District Court
Northern District of California

04936-LB – ECF No. 37 at 11–14 (N.D. Cal. Apr. 5, 2013); *Brown v. The Hain Celestial,* No. 3:11-03082-LB – ECF No. 104 at 8–13 (N.D. Cal. Dec. 22, 2012). At the pleadings stage, the plaintiff has alleged uniform misrepresentations across product lines.

## CONCLUSION

The court denies the motion to dismiss. This disposes of ECF No. 29.

**IT IS SO ORDERED.**

Dated: January 4, 2021



_____
LAUREL BEELER
United States Magistrate Judge