UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ANTHONY BUSH,<br><br>    Plaintiff,<br><br>v.<br><br>RUST-OLEUM CORPORATION,<br><br>    Defendant. | Case No. 20-cv-03268-LB<br><br>**ORDER DENYING MOTIONS TO EXCLUDE EXPERT OPINIONS**<br><br>Re: ECF Nos. 131, 163 |

**INTRODUCTION AND STATEMENT**

This is a consumer-products mislabeling case. On behalf of a class of California consumers, the plaintiff challenges defendant Rust-Oleum's labeling of its "Krud Kutter" cleaning products as "non-toxic" and "Earth friendly," contending that the products in fact can cause harm to humans, animals, and the environment, in violation of California consumer-protection laws. The parties moved to exclude each other's survey experts.[1] The court denies the motions.

The operative complaint has five claims: (1) unlawful, unfair, and fraudulent business practices under the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200–08; (2) deceptive advertising under the False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500;

---

[1] Mots. – ECF Nos. 131, 163. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 20-cv-03268-LB

(3) deceptive practices under the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750–84; (4) breach of express warranties; and (5) unjust enrichment.[2]

It is undisputed that the court has diversity jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d). All parties consented to magistrate-judge jurisdiction.[3] *Id.* § 636(c). The court held a hearing on January 25, 2024.

## ANALYSIS

### 1. Legal Standard

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if four requirements are met: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993). "Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147–49 (1999)). "*Daubert* does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance." *Id.* (citing *Daubert*, 509 U.S. at 589–90). "Thus, an expert's 'inference or assertion must be derived by the scientific method' to be admissible." *Id.* (quoting *Daubert*, 509 U.S. at 590). "A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Id.* (citing *Kumho Tire*, 526 U.S. at 152).

The court "must assure that the expert testimony 'both rests on a reliable foundation and is

---

[2] First Am. Compl. – ECF No. 26 at 31–43 (¶¶ 66–161).

[3] Consents – ECF Nos. 6, 17.

relevant to the task at hand.'" *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564. The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the requirements of Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Id.* at 564–65.

At issue here are expert surveys. The Ninth Circuit has said that at least in trademark cases, "[c]hallenges to survey methodology go to the weight given the survey, not its admissibility." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). Put another way, "[t]echnical unreliability goes to the weight accorded a survey." *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1982). Arguments that a survey's sample was unrepresentative, for example, go to weight only. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997). "Surveys conducted according to accepted principles are routinely admitted." *Prudential*, 694 F.2d at 1156; *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 613 (9th Cir. 2016) (applying this standard in the false-advertising context).

**2. Application**

**2.1   The Plaintiff's Motion**

The plaintiff moves to exclude the opinions and survey of the defendant's market-research expert Dr. Ran Kivetz. Dr. Kivetz asked questions of a test group and a control group: the test group was shown the actual label of one of the Krud Kutter products, and the control group was shown the same label but without the challenged label claims ("non-toxic" and "Earth friendly"). The respondents were then asked questions including whether they would buy the product shown

and (in open-ended form) why they would or would not buy it.[4] The court first summarizes the plaintiff's arguments and then denies the motion.

First, the plaintiff contends that some of Dr. Kivetz's opinions are irrelevant. Dr. Kivetz opined, based on the difference between the test and control groups in whether they would purchase the product, that the challenged claims are not a but-for cause of purchasing decisions. He also opined based on the open-ended responses that there are a variety of reasons for consumers' purchasing decisions. The plaintiff argues that under the reasonable-consumer test, the challenged claims can be "material" to purchasing decisions even if the claims are not a but-for cause of the decisions and a variety of factors go into the decisions.

Second, the plaintiff contends that Dr. Kivetz's survey is unreliable because he used an improper control. According to the plaintiff, the control had the same features as the test because the control had "references to 'non-toxic' and 'Earth friendly' features" in the form of "the 'biodegradability' claim and the Environmental Protection Agency's 'Safer Choice' seal on the front packaging; as well as the word 'safely' from the back-packaging claim that the formula 'safely and easily' removes various substances."

Third, the plaintiff argues that Dr. Kivetz's survey is unreliable because it "introduce[d] pre-existing attitudes" by "prominently displaying the Krud Kutter brand" in the survey and because it did not use "manipulation checks to determine whether the experimental treatment — removal of the 'non-toxic' and 'Earth friendly' claims in the control stimulus — was effective."

Fourth, according to the plaintiff, Dr. Kivetz's open-ended questions and the resulting analysis are unreliable, mainly because close-ended questions are better suited for qualitative research and open-ended questions tend to measure only what comes first to a respondent's mind.

Fifth, the plaintiff contends that Dr. Kivetz's survey is unreliable because it doesn't properly represent the class or replicate the marketplace.

Sixth, the plaintiff asserts that Dr. Kivetz did not provide the plaintiff all of the data used to form his opinions. This data mainly concerns Dr. Kivetz's open-ended questions, for example

---

[4] Pl.'s Mot. – ECF No. 131.

"[t]he [c]oding [f]rame Dr. Kivetz developed for two purportedly blind coders to code the responses to the open-ended [q]uestions."

The plaintiff's arguments mainly go to the weight that should be accorded to Dr. Kivetz's survey and opinions. The plaintiff's attack on Dr. Kivetz's control, for example, is about survey methodology and Dr. Kivetz's methods are generally within the bounds of accepted principles. *Prudential*, 694 F.2d at 1156. "[A]dmit[ting] the survey and discount[ing] its probative value," if warranted, "seems the better course." *Id.*; *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2016 WL 1743116, at *6–7 (N.D. Cal. May 2, 2016) (rejecting various attacks on an expert survey, including on whether the sample was representative).

As for the data that Dr. Kivetz did not provide, parties must disclose expert testimony "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). An expert disclosure must be accompanied by a written report that includes: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B). A party should supplement its expert disclosure in a timely manner if its learns the disclosure is materially incomplete or incorrect and the corrective information has not otherwise been made known to the other parties. Fed. R. Civ. P. 26(e). This rule does not allow parties to supplement their reports with information that was available prior to the disclosure deadline. *See Salgado ex rel. Salgado v. General Motors Corp.*, 150 F.3d 735 (7th Cir. 1998).

"When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1).

If a party fails to comply with the disclosure rules, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008) ("We have explained that Rule 37(c)(1) gives teeth to this requirement by forbidding the use at trial of any information required to be disclosed by

Rule 26(a) that is not properly disclosed."). Here, it is the defendant's burden to show that the failure to comply with Rule 26(a) is substantially justified or harmless. *Torres*, 548 F.3d at 1213 (burden is on the party facing the sanction to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless; the other party is not required to articulate how he would be prejudiced).

The reply brief narrows the data in dispute somewhat.[5] Dr. Kivetz apparently used a coding company to have blind coders categorize the responses to his open-ended questions. Certain responses were excluded by the coding company, for example those that were "gibberish" or on which the respondent spent too little time. Some of the data at issue, such as "all starts and metadata reflecting the excluded interviews and basis for their exclusion" were never actually provided to Dr. Kivetz. The Ninth Circuit has said that the data an expert "considered" under Rule 26(a) refers to data the expert "was provided or otherwise exposed to in the course of developing his or her opinions." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869–70 (9th Cir. 2014). The plaintiff cites no cases indicating otherwise in the context of an expert's contractor or employee.

As for the "pricing data that Dr. Kivetz collected to select the $9.47 price point in his survey," the defendant contends that it's public. This indicates any failure to produce was harmless. The court thus denies the plaintiff's motion, but this portion of the motion (regarding the alleged failure to produce data) is denied without prejudice to its being refiled as a separately noticed motion if warranted. N.D. Cal. Civ. L.R. 7-8.

### 2.2   The Defendant's Motion

The defendant moves to exclude the declaration of the plaintiff's survey expert, Dr. J. Michael Dennis. The defendant contends that Dr. Dennis committed "the same methodological errors made in previously excluded surveys" in other cases. Dr. Dennis sought to determine "the extent to which the reasonable consumer perceives the [c]hallenged [c]laims to mean that the [p]roducts [at issue] are not harmful to humans, animals, and/or the environment." His survey showed a

---

[5] Pl.'s Reply – ECF No. 156 at 17–18.

hypothetical label without the Krud Kutter brand name and asked respondents whether they believe that the challenged claims communicate the aforementioned meaning.[6]

Having explained why the plaintiff's arguments go to weight rather than admissibility, the court will not walk through the defendant's motion in detail, other than to note that the same holds true. These are alleged methodological errors that, even granting the defendant's premises, are not so severe as in the cited cases. In *Senne v. Kansas City Royals Baseball Corp.*, for example, the survey relied "on the ability of the minor league [baseball] players to remember the type of mundane events necessary to come up with reliable answers to questions about the amount of time they spent on various types of activities." 315 F.R.D. 523, 590 (N.D. Cal. 2016). In other key cases, the court criticized rather than excluded Dr. Dennis's report. At least in the Ninth Circuit, the issues in dispute are not enough to defeat Dr. Dennis's declaration here. The court thus denies the motion.

## CONCLUSION

The court denies the motions to exclude expert opinions. This resolves ECF Nos. 131 and 163.

**IT IS SO ORDERED.**

Dated: February 8, 2024

LAUREL BEELER
United States Magistrate Judge

---

[6] Def.'s Mot. – ECF No. 163.