**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Ave., 3rd Fl
Palo Alto, California 94301
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ANTHONY BUSH, individually and on behalf of all others similarly situated,

                Plaintiff,

      v.

RUST-OLEUM CORPORATION,

                Defendant.

Case No. 3:20-cv-03268-LB
Complaint Filed: May 13, 2020
FAC Filed: August 24, 2020

*Assigned for all Purposes to Hon. Laurel Beeler, United States Magistrate Judge*

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Hearing Information:
Date: April 17, 2025
Time: 9:30 a.m.
Courtroom: B

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1  **NOTICE OF MOTION AND MOTION**

2  TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

3  PLEASE TAKE NOTICE that on April 17, 2025, at 9:30 a.m., in Courtroom B of the United

4  States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden

5  Gate Ave., San Francisco, CA 94102, the Honorable Laurel Beeler presiding, Plaintiff Anthony

6  Bush will and hereby does move for an Order pursuant to the Federal Rules of Civil Procedure

7  granting preliminary approval of the proposed settlement with Defendant Rust-Oleum Corporation.

8  This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

9  and Authorities set forth below, the accompanying Declaration of Bahar Sodaify, the exhibit thereto,

10  the pleadings and records on file in this action, and other relevant matters and argument as the Court

11  may consider at the hearing of this motion.

12

13  Dated: February 24, 2025                    **CLARKSON LAW FIRM, P.C.**

14                                              By: */s/ Bahar Sodaify*
15                                                      Ryan J. Clarkson
                                                        Bahar Sodaify
16                                                      Alan Gudino

17                                              **MOON LAW APC**

18                                              By: */s/ Christopher D. Moon*
                                                        Christopher D. Moon
19                                                      Kevin O. Moon

20                                              *Attorneys for Plaintiff*

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

    A.    Plaintiff Filed This Action to Challenge Defendant's Deceptive Labeling................. 2

    B.    Defendant's Motion to Dismiss Was Denied ......................................................... 2

    C.    The Parties Engaged in Extensive Discovery and Expert Analysis .......................... 3

    D.    The Court Certified the CA Class and Denied Defendant's Dispositive Motions...... 3

    E.    Defendant Sought Interlocutory Appeal and Moved for Leave to File a Motion for Reconsideration, Both of Which Were Denied ........................................................ 4

    F.    Parties Achieved Settlement Through Arms-Length Mediation and Negotiation ...... 4

III.  THE SETTLEMENT TERMS ............................................................................ 5

    A.    Class Definition .................................................................................................. 5

    B.    Injunctive Relief Addressing the Claims in the Complaint .................................... 5

    C.    Monetary Relief Through a Non-Reversionary Settlement Fund ............................. 5

    D.    Class Release of Claims ....................................................................................... 6

    E.    Class Notice and Administration ......................................................................... 7

    F.    Service Award for Plaintiff .................................................................................. 8

    G.    Attorneys' Fees, Costs, and Expenses ................................................................. 8

IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................... 8

    A.    The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied .................................... 9

        1.    The Class Is Sufficiently Numerous .......................................................... 9

        2.    Questions of Law and Fact Are Common to the Class ..................................... 10

        3.    Plaintiff's Claims Are Typical of the Class Claims ......................................... 11

        4.    Plaintiff and Class Counsel Will Adequately Represent the Class .................. 12

    B.    The Requirements of Rule 23(b)(3) Are Satisfied ............................................... 13

        1.    Common Questions Predominate Over Questions Affecting Individual Class Members................................................................................................. 13

2. The Class Is Superior to Alternative Methods for Resolving This Controversy .................................................................... 14

V.   THE PRELIMINARY APPROVAL STANDARD IS SATISFIED ..................................... 15

A.   The Settlement Resulted from Serious, Informed, Non-Collusive Arm's Length Negotiations ...................................................................... 16

B.   The Settlement Does Not Provide Preferential Treatment ......................................... 18

C.   The Settlement Falls Within the Range of Possible Approval .................................. 19

D.   The Settlement Has No Deficiencies ........................................................ 21

VI.   PROPOSED SCHEDULE OF EVENTS ........................................................... 22

VII.   CONCLUSION ........................................................................ 23

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Page No.**

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................................9, 13, 14

*Banks v. Nissan N. Am., Inc.*,
   301 F.R.D. 327 (N.D. Cal. 2013) .................................................................. 14

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017)...................................................................... 10

*Bruno v. Quten Rsch. Inst., LLC.*,
   2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ............................................... 19

*Campbell v. Facebook, Inc.*,
   2017 WL 3581179 (N.D. Cal. Aug. 18, 2017)
   *aff'd*, 951 F.3d 1106 (9th Cir. 2020) ........................................................... 18

*Carr v. Tadin, Inc.*,
   2014 WL 7497152 (S.D. Cal. Apr. 18, 2014) .............................................. 20

*Chamberlan v. Ford Motor Co.*,
   223 F.R.D. 524 (N.D. Cal. 2004) .................................................................. 14

*Curtis-Bauer v. Morgan Stanley & Co.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .............................................. 16

*Dennis v. Kellogg Co.*,
   2013 WL 1883071 (S.D. Cal. May 3, 2013) ................................................ 20

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)................................................................... 11, 12

*Fontes v. Heritage Operating, L.P.*,
   2016 WL 1465158 (S.D. Cal. Apr. 14, 2016) .............................................. 15

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989)...................................................................... 15

*Gatchalian v. Atl. Recovery Sols., LLC*,
   2023 WL 8007107 (N.D. Cal. Nov. 16, 2023) ............................................ 16

*Goldkorn v. County of San Bernardino*,
   2012 WL 476279 (C.D. Cal. Feb. 13, 2012) ............................................... 22

*Grant v. Capital Management Servs., L.P.*,
   2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ................................................. 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. Cal. 1998) .......................................................9, 11, 12

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ................................................................................................ 9

*Harris v. Vector Mktg. Corp.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................................................... 18

*Hunt v. Check Recovery Sys., Inc.*,
   241 F.R.D. 505 (N.D. Cal. 2007) ....................................................................................... 11

*In re Bluetooth Headset Products Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................................................. 18

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) .................................................................................. 10

*In re Ferrero Litig.*,
   2012 WL 2802051 (S.D. Cal. July 9, 2012)
   *aff'd*, 583 F. App'x 665 (9th Cir. 2014) ............................................................................. 20

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ......................................................................................... 12, 16

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .............................................................................................. 18

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................................ 18

*In re Synoc ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................................ 15

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................................... 19, 21

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   571 F.3d 953 (9th Cir. 2009) .............................................................................................. 13

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ..................................................................................... 9, 17

*Johnson v. Triple Leaf Tea Inc.*,
   2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ................................................................... 21

*Keegan v. Am. Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ....................................................................................... 10

*Kline v. Dymatize Enters., LLC*,
   2016 WL 6026330 (S.D. Cal. Oct. 13, 2016) .................................................................... 18

*Lilly v. Jamba Juice Co.*,
   2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ................................................................... 16

*Lilly v. Jamba Juice Co.*,
   2015 WL 2062858 (N.D. Cal. May 4, 2015) ..................................................................... 21

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ............................................................................................ 13

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................ 15

*Rivera v. Agreserves, Inc.*,
    2016 WL 5395900 (E.D. Cal. Sept. 26, 2016) ...................................................... 19

*Stanton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................. 18

*Stathakos v. Columbia Sportswear Co.*,
    2018 WL 582564 (N.D. Cal. Jan. 25, 2018) .......................................................... 21

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .................................................................................... 16

*Utility Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) .................................................................................. 15

*Villegas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................ 10

*White v. Experian Info. Sols., Inc.*,
    2009 WL 10670553 (C.D. Cal. May 7, 2009) ........................................................ 17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................................ 15

*Zincser v. Accufix Research Institute, Inc.*,
    253 F.3d 1188 (9th Cir. 2001)
    *amended* 273 F. 3d 1266 (9th Cir. 2001) ............................................................... 13

**California Codes**

California Civil Code § 1542 ........................................................................................... 6

**Federal Rules**

Fed. R. Civ. P. 23...................................................................................................*passim*

**Other Authorities**

Manual for Complex Litigation § 21.632 (4th ed. 2004) ............................................... 16

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**MEMORANDUM OF POINTS AND AUTHORITES**

## I.    INTRODUCTION

Plaintiff Anthony Bush ("Plaintiff") has reached a nationwide class settlement with Defendant Rust-Oleum Corporation ("Defendant") that provides meaningful injunctive relief and monetary compensation for consumers who purchased Defendant's Krud Kutter cleaning products labeled as "Non-Toxic" and "Earth Friendly." The settlement follows nearly five years of rigorous litigation, including extensive fact and expert discovery, class certification briefing, motions to exclude expert testimony, and summary judgment briefing.

Plaintiff alleged that Defendant deceptively labeled, marketed, and sold various Krud Kutter products as "Non-Toxic" and "Earth Friendly" despite containing ingredients that could cause harm to humans, animals, and the environment (the "Products"). (ECF No. 26.) Plaintiff pursued claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"), as well as claims for breach of express warranty and unjust enrichment. (*Id.* ¶¶ 66-161.) During this litigation, the Court certified a class of California consumers (ECF No. 189) for injunctive relief and monetary damages, and it denied Defendant's motion for summary judgment (ECF No. 186), motion to exclude expert testimony (ECF No. 190), and motion for leave to file motion for reconsideration (ECF No. 207).

With class certification granted and continued litigation presenting risks and delays, Plaintiff has achieved a comprehensive resolution that would provide timely and certain relief for consumers nationwide. The Settlement[1] ensures that Defendant will modify its labeling practices by removing the "Non-Toxic" representation and adding a qualifier to the "Earth Friendly" claim on the Products' labels to eliminate the alleged deception. (Ex. A § 5.1.) Defendant also has agreed to establish a $1.5 million non-reversionary Settlement Fund to compensate consumers. (*Id.* § 2.1.) The monetary relief allows Class Members who submit valid claims to receive cash payments based on their Product purchases. (*Id.* § 4.1.) Any remaining funds will be distributed *cy pres* to Earthjustice, a nonprofit environmental law organization dedicated to protecting public health and the

---

[1] *See* Settlement Agreement ("Settlement"), attached as Exhibit A ("Ex. A") to the Declaration of Bahar Sodaify ("Sodaify Decl.").

environment, and Mamavation, a consumer advocacy group focused on environmental health and toxin-free living. (*See id.* § 4.2.)

Plaintiff now seeks preliminary approval of the Settlement, conditional certification of the nationwide Settlement Class, and approval of the proposed Notice Plan to inform Class Members of their rights. This Settlement provides substantial benefits while avoiding the risks and uncertainties associated with further litigation. Accordingly, Plaintiff requests that the Court grant preliminary approval of the Settlement, approve the proposed Notice Plan, and establish a schedule for the dissemination of notice, the claims process, and a fairness hearing to determine final approval of the Settlement, including the payment of attorneys' fees, cost reimbursements, and the incentive award.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff Filed This Action to Challenge Defendant's Deceptive Labeling

On May 13, 2020, Plaintiff filed this class action against Defendant in the United States District Court for the Northern District of California, alleging violations of the UCL, FAL, CLRA, as well as claims for breach of express warranty and unjust enrichment. (ECF No. 26 ¶¶ 66-161.) Plaintiff asserted that Defendant deceptively marketed and sold its Krud Kutter cleaning Products as "Non-Toxic" and "Earth Friendly" despite containing ingredients Plaintiff alleged cause harm to humans, animals, and the environment. (*Id.* ¶¶ 1-10, 14-20.)

### B.    Defendant's Motion to Dismiss Was Denied

Defendant subsequently moved to dismiss Plaintiff's First Amended Complaint, arguing, among other things, that Plaintiff failed to sufficiently allege deception, standing, and the plausibility of consumer harm. (ECF No. 29.) Defendant contended that the Products' labels contained sufficient disclaimers, and that no reasonable consumer would be misled by the challenged representations. (*Id.*) Plaintiff opposed the motion by noting that the "Non-Toxic" and "Earth Friendly" claims were prominently displayed and conveyed false assurances about the Products' safety. (ECF No. 33.) The Court denied Defendant's motion in full, finding that Plaintiff had adequately pled consumer deception, injury, and entitlement to relief under all asserted causes of action, and that reasonable consumers could be misled by Defendant's labeling. (ECF No. 51.)

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**C.      The Parties Engaged in Extensive Discovery and Expert Analysis**

Following the denial of Defendant's motion to dismiss, the parties engaged in extensive fact and expert discovery. (Sodaify Decl. ¶ 6.) The parties exchanged written discovery, reviewed thousands of pages of internal corporate documents and marketing materials, and deposed key witnesses, including corporate representatives and experts. (*Id.*) Plaintiff retained expert witnesses, including survey researchers and chemists, to analyze consumer perception of the challenged label claims and the chemical composition of the Products. (*Id.*) Meanwhile, Defendant retained rebuttal experts to challenge Plaintiff's scientific and economic conclusions. (*Id.*)

**D.      The Court Certified the CA Class and Denied Defendant's Dispositive Motions**

In February 2024, Plaintiff moved to certify a California class for injunctive relief under Rule 23(b)(2) and for damages under Rule 23(b)(3). (ECF No. 95.) Before the Court ruled on Plaintiff's motion for class certification, Defendant moved for summary judgment, arguing that disclaimers on the Products' labels purportedly contradicted Plaintiff's allegations and that Plaintiff's expert testimony failed to establish consumer deception. (ECF No. 116.) Defendant contended that no reasonable consumer could be misled by the Products' claims and that Plaintiff lacked evidence of an injury. (*Id.*) In response, Plaintiff relied on a consumer perception survey and expert testimony to demonstrate that consumers were likely to be misled by the "Non-Toxic" and "Earth Friendly" claims. (ECF No. 142.)

While Defendant's summary judgment motion was pending, the Court granted Plaintiff's motion for class certification, finding that Plaintiff met all Rule 23 requirements, as the case involved uniform representations on the Products' labels that applied to all Class Members equally. (ECF No. 189.) The Court also determined that Plaintiff had standing to seek injunctive relief and that damages could be determined on a class-wide basis. (*Id.*) Subsequently, the Court denied Defendant's motion for summary judgment, ruling that factual disputes remained regarding whether the labeling was deceptive and whether consumers paid a price premium due to the challenged representations. (ECF No. 186.)

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**E.    Defendant Sought Interlocutory Appeal and Moved for Leave to File a Motion for Reconsideration, Both of Which Were Denied**

After the Court granted Plaintiff's motion for class certification, Defendant petitioned the Ninth Circuit for permission to appeal the Court's class certification order under Rule 23(f). (ECF No. 191-1.) While that petition was pending, Defendant moved for leave to file a motion for reconsideration of the Court's summary judgment ruling, reiterating its arguments regarding consumer deception and asserting that Plaintiff's expert evidence was insufficient. (ECF No. 199.) Defendant also contended that new case law and additional clarifications about consumers' understanding of the challenged claims warranted reconsideration. (*Id.*) The Ninth Circuit then denied Defendant's petition (ECF No. 204), and shortly thereafter, the Court denied Defendant's motion for leave to file a motion for reconsideration, holding that Defendant had not presented any new evidence or legal grounds to justify reconsideration (ECF No. 207).

**F.    Parties Achieved Settlement Through Arms-Length Mediation and Negotiation**

On July 22, 2024, the parties participated in a full-day mediation with experienced mediator Hunter Hughes of Alternative Dispute Resolution. (Sodaify Decl. ¶ 10.) Although the mediation did not immediately resolve the case, it facilitated further negotiations with the continued involvement of the mediator, which ultimately led to an agreement in principle. (*Id.*) The parties later formalized the Settlement, which provides for injunctive relief and the establishment of a $1.5 million non-reversionary Settlement Fund. (Ex. A §§ 2.1, 5.1.) The injunctive relief requires Defendant to remove the "Non-Toxic" representation from its Products' labels and modify the "Earth Friendly" representation by adding qualifying language to eliminate the deception. (*Id.* § 5.1.) The Settlement also provides monetary relief to Class Members who submit valid claims. (*Id.* § 4.1.) Plaintiff now submits this motion for preliminary approval of the Settlement to bring this Action to a final and equitable resolution.

//

//

//

//

III.    **THE SETTLEMENT TERMS**

The key terms of the Settlement are summarized as follows:

A.    **Class Definition**

The "Settlement Class" includes:

"All persons in the United States of America who purchased one or more of Defendant's Covered Products at any time during the Class Period. Excluded from the Settlement Class are any officers, directors, or employees of Defendant, and the immediate family members of any such person. Also excluded is any judge who may preside over this case." (*Id.* § 1.9.)

B.    **Injunctive Relief Addressing the Claims in the Complaint**

Defendant has agreed to implement significant labeling and marketing changes to address the allegations in the Complaint. Specifically, Defendant will remove the "Non-Toxic" representation from the packaging and labeling of the Products. (*Id.* § 5.1.) Additionally, Defendant will add an asterisk to the "Earth Friendly" representation on the Products' front labels to direct consumers to the back label where it will state: "Contains no inorganic phosphates, hazardous solvents, or environmentally harmful surfactants," or similar qualifying language. (*Id.*) Defendant is required to implement these changes as part of the Settlement's injunctive relief to ensure that future product labeling comports with the claims made to consumers. To facilitate this transition, the Settlement permits Defendant and its successors to sell through existing inventory without requiring the withdrawal, destruction, or recall of previously manufactured Products or promotional materials. (*Id.* § 5.1.1.) This transition ensures that the labeling changes take effect moving forward while avoiding unnecessary waste.

C.    **Monetary Relief Through a Non-Reversionary Settlement Fund**

Defendant also agrees to establish a non-reversionary Settlement Fund totaling $1.5 million (the "Total Settlement Fund"), which will be used to pay: (1) any necessary taxes and tax expenses, (2) all costs and expenses associated with disseminating Class Notice, (3) all costs and expenses associated with the administration of the Settlement, including but not limited to processing claims and fees of the Settlement Administrator, (4) any attorneys' fees and expenses awarded by the Court to Class Counsel, (5) any service award made by the Court to Plaintiff, and (6) cash payments

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

distributed to Claimants who submit timely, valid, and approved claims. (*Id.* § 2.1.) The Settlement provides direct monetary relief to Class Members based on the number of Products they purchased. (*Id.* § 4.1.3.) Class Members who submit valid claims with proof of purchase will receive $1.00 per product purchased, with no cap on the number of claims. (*Id.*) Class Members who submit claims without proof of purchase are eligible to receive $1.00 per product for up to eight (8) products per household. (*Id.*) Payments will be distributed electronically via PayPal, Venmo, Zelle, ACH transfer, or a prepaid digital Mastercard, with an option for a mailed check. (*Id.* § 4.1.4.)

If the total value of approved claims exceeds the available funds, payments will be reduced pro rata to ensure equitable distribution among claimants. (*Id.* § 4.1.5.) Conversely, if total claims are less than the available funds, payments will be increased pro rata, subject to a cap of two times the original per-product claim amount (*i.e.*, a maximum of $2.00 per product). (*Id.*) Interest accrued on the Settlement Fund will inure to the benefit of the Settlement Class. (*Id.* § 2.2.) Defendant will fund the Total Settlement Fund within 30 days following the Court's Preliminary Approval Order. (*Id.* § 2.3.) Any unclaimed funds after the initial distribution will be donated *cy pres* in equal shares to Earthjustice and Mamavation. (*Id.* § 4.2.)

### D.    Class Release of Claims

Upon the Court's entry of the Final Approval Order and the Effective Date, and the full funding of the Settlement amount, the Action will be dismissed with prejudice, and all Released Claims will be conclusively settled, compromised, and released against the Released Parties. (*Id.* § 8.1.) The relief provided by the Settlement will be the sole and exclusive remedy for all Settlement Class Members with respect to the Released Claims. (*Id.*)

The Settlement provides that Settlement Class Members release and discharge the Released Parties from all actual, potential, or unasserted claims arising out of or related to the advertising, marketing, labeling, and sale of the Products. (*Id.* § 8.2.) The release extends to both known and unknown claims, including those Settlement Class Members may not be aware of at the time of settlement, subject to the waiver provisions under California Civil Code § 1542 and similar laws. (*Id.* § 8.3.) The release does not, however, extend to claims for bodily injury, wrongful death, or emotional distress arising from bodily injury none of which were alleged in this Action. (*Id.* § 8.2.)

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Plaintiff has also executed an individual release to resolve all claims arising from this Action and any personal purchase or use of the Products before the Settlement Effective Date. (*Id.* § 8.8.) The Court will retain jurisdiction over the implementation and enforcement of the Settlement to ensure compliance with its terms and to facilitate resolution of any related disputes. (*Id.* § 8.6.)

### E.    Class Notice and Administration

The Settlement provides for a comprehensive Notice Plan to ensure Class Members are informed of their rights. Digital Settlement, LLC has been selected as the Settlement Administrator and is subject to Court approval. (*Id.* § 6.1; *id.*, Ex. 4.) The Settlement Administrator will oversee and execute all aspects of the notice and claims administration process in compliance with the terms of the Settlement and orders of the Court. (Ex. A § 6.1.)

The Class Notice will be disseminated through a multi-channel approach, including internet and social media advertisements, to ensure broad reach and compliance with due process requirements. (*Id.* § 6.2.) The advertisements will direct consumers to the Settlement Website, which will provide additional details about the Settlement, including how to file a claim, opt-out, or object. (*Id.*) Published notice will be implemented for 30 days following the Settlement Notice Date. (*Id.*)

The Settlement Administrator's responsibilities include: (1) establishing and operating the Settlement Fund; (2) implementing the Class Notice Plan in accordance with the Agreement and Court approval; (3) distributing notices to the U.S. Department of Justice and State Attorneys General as required by the Class Action Fairness Act; (4) responding to inquiries from Settlement Class Members and directing them to Class Counsel as necessary; (5) processing requests for exclusion from the Settlement; (6) establishing and maintaining a Settlement Website with relevant case details; (7) creating and maintaining a toll-free hotline for Settlement Class Members; (8) reviewing and validating claims submitted by Class Members and distributing settlement payments; (9) providing periodic status updates to the Parties' counsel; (10) preparing a sworn declaration attesting to compliance with the Notice Plan and claims administration; and (11) administering all other aspects of the Settlement process as directed by the Court. (*Id.* § 6.3; *see id.*, Exs. 1-4.)

Class Notice will commence within 30 days of the Court's Preliminary Approval Order. (Ex. A § 6.4.) Settlement Class Members who wish to opt out must submit a valid request for exclusion by the Opt-Out Deadline. (*Id.* § 6.5.) Mass or class opt-outs will not be permitted. (*Id.*) The Settlement Administrator will track and report exclusions to the Parties' counsel. (*Id.*) And Class Members who do not opt out will be bound by the Settlement and its terms, including the release of claims. (*Id.*)

Settlement Class Members may also submit objections to the Settlement in writing. (*Id.* § 6.6.) To be considered by the Court, objections must be postmarked by the Objection Deadline and contain specific information, including the basis of the objection and any supporting legal or factual arguments. (*Id.*) Objectors may appear at the Final Approval Hearing if they comply with the filing and notice requirements. (*Id.*)

## F.    Service Award for Plaintiff

Class Counsel will request a Service Award for Plaintiff in recognition of his contributions to the litigation, including participation in discovery, attending his deposition, and assisting Class Counsel throughout the case. (*Id.* § 3.3.) The requested Service Award will not exceed $5,000 and will be paid from the Settlement Fund. (*Id.*)

## G.    Attorneys' Fees, Costs, and Expenses

Pursuant to Rule 23(h), Class Counsel will apply for an award of Attorneys' Fees not to exceed $500,000. (*Id.* § 3.1.) Class Counsel will also apply for reimbursement of reasonable litigation costs and expenses to be paid from the Settlement Fund. (*Id.*) This request is based on the extensive work performed by Class Counsel in litigating the case, successfully certifying the Class, and negotiating the Settlement. The Parties have not agreed on the amount of any attorneys' fees, costs or expenses, and Defendant reserves the right to oppose or object to such amounts. (*Id.*)

## IV.    <u>THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS</u>

Plaintiff respectfully requests that the Court conditionally certify a nationwide Settlement Class for purposes of approving this Settlement. This Court has already certified a California class (ECF No. 189), but Plaintiff now seeks to certify a broader nationwide Settlement Class to provide uniform relief to all consumers affected by Defendant's alleged deceptive marketing and labeling

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

practices related to the "Non-Toxic" and "Earth Friendly" representations on the Products. Conditional certification of a nationwide class for settlement purposes only will ensure that all similarly situated consumers receive the benefits of the Settlement while preserving their rights to opt out if they so choose.

When granting preliminary approval of a class action settlement, it is appropriate for a court to certify a class for settlement purposes only. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Parties may . . . stipulate that a defined class be conditionally certified for settlement purposes."). Here, the Parties have agreed to certification of the following Settlement Class for settlement purposes only: "All persons in the United States of America who purchased one or more of Defendant's Covered Products at any time during the Class Period. Excluded from the Settlement Class are any officers, directors, or employees of Defendant, and the immediate family members of any such person. Also excluded is any judge who may preside over this case." (Ex. A § 1.9.)

This proposed Settlement Class encompasses all consumers who were exposed to and allegedly misled by Defendant's marketing and labeling of the Products across the United States. Nationwide certification is appropriate given that Defendant's labeling practices were uniform nationwide and affected all consumers in the same manner.

## A.    The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied

Rule 23(a) sets forth the following prerequisites for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are satisfied here.

### 1.    The Class Is Sufficiently Numerous

Class certification under Rule 23(a)(1) is appropriate where a class is so "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. Cal. 1998). Impracticability does not mean impossibility, but rather that joinder would be unreasonably difficulty or inconvenient. *Harris v. Palm Springs Alpine Estates,*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Generally, as few as 40 people are enough to certify a class. *See Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (noting that "[a]s a general rule . . . classes of 40 or more are numerous enough.").

Here, numerosity is unquestionably met. The Court previously certified a California class, finding that the number of consumers who purchased the Products in California alone was sufficient to satisfy this requirement. (ECF No. 189 at 3:23-25.) Expanding the Class nationwide for purposes of this Settlement further reinforces the impracticability of joinder. Given the scale of distribution and sales, it is reasonable to infer that the number of Class Members far exceeds the threshold typically required for numerosity. Accordingly, the numerosity requirement is satisfied.

### 2.    Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) requires the presence of a common question of law or fact that is capable of class-wide resolution and central to the validity of all Class Members' claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). Not every question of fact and law must be identical among Class Members; rather, it is sufficient that there exists a common core of facts or legal theories that unite the Class. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 972 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).

Here, common questions of law and fact predominate, as all Class Members were subjected to the same misleading representations on Defendant's labeling and marketing of the Products. The main allegations in the First Amended Complaint are that Defendant's labeling of the Products as "Non-Toxic" and "Earth Friendly" was deceptive and misleading to reasonable consumers, in violation of California's consumer protection laws. (*See* ECF No. 26 ¶¶ 2, 10-11, 29.) The Settlement Class Members share several common legal and factual issues, including but not limited to: (1) Whether Defendant's marketing, advertising, and labeling of the Products violated the UCL, FAL, and CLRA; (2) Whether Defendant breached express warranties by making false representations regarding the safety and environmental impact of the Products; and (3) Whether Settlement Class Members paid a price premium due to the alleged misrepresentations on the Products. (*Id.* ¶ 59.)

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

These questions are common to all Class Members because they arise from the same alleged deceptive conduct by Defendant and will be resolved through the same legal and evidentiary analysis. Accordingly, the commonality requirement is met.

### 3.    Plaintiff's Claims Are Typical of the Class Claims

The typicality requirement is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are considered typical if they arise from the same conduct that gives rise to the claims of other class members and are based on the same legal theories. *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 511 (N.D. Cal. 2007). To establish typicality, a plaintiff must show that other class members suffered similar injuries resulting from the same course of conduct and that the named plaintiff is not subject to unique defenses. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). However, claims "need not be substantially identical" but only "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

Plaintiff's claims here are typical of those of the Settlement Class because they arise from the same alleged misrepresentations made by Defendant regarding the Products. Plaintiff, like all other Settlement Class Members, purchased Defendant's Products, which were marketed and labeled as "Non-Toxic" and "Earth Friendly." (ECF No. 26 ¶¶ 10-11.) Plaintiff alleges that these representations were deceptive and misleading because the Products contained ingredients that could cause harm to humans, animals, or the environment. (*Id.* ¶¶ 31-34, 39-44.) The claims of all Settlement Class Members are premised on the same legal theories, including violations of California's consumer protection statutes, breach of express warranties, and unjust enrichment. (*Id.* ¶¶ 66-161.)

Moreover, Plaintiff's injury of paying a premium for the Products based on the alleged misrepresentations is the same injury suffered by all Class Members. (*Id.* ¶¶ 94, 103, 120.) The evidence used to prove Plaintiff's claims, including Defendant's marketing materials, product labeling, and expert analyses of consumer perception, will be the same evidence used to establish liability for the entire Class. (*See generally* ECF No. 95.) Because Plaintiff's claims arise from the same alleged misconduct and legal theories as the claims of all Class Members, the typicality

1    requirement is satisfied.

2         **4.    Plaintiff and Class Counsel Will Adequately Represent the Class**

3         The adequacy requirement is satisfied when the class representative will fairly and adequately

4    protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement ensures that the named

5    plaintiff has no conflicts of interest with the proposed Settlement Class and that class counsel is

6    competent and qualified to litigate on behalf of the Class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

7    454, 462 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1020; *Ellis*, 657 F.3d at 985 (finding adequacy is met

8    where there is "an absence of antagonism between representatives and absentees, and a sharing of

9    interest between representatives and absentees").

10        Plaintiff here is an adequate representative of the Settlement Class. Plaintiff is a member of the

11   proposed nationwide Class, purchased the Products during the relevant period, and alleges he suffered

12   the same type of injury as other Class Members (*i.e.*, paying a price premium due to Defendant's

13   alleged misrepresentations that the Products were "Non-Toxic" and "Earth Friendly"). (ECF No. 95-2

14   ¶¶ 5, 6.) There is no evidence of any conflict between Plaintiff and other Class Members, as Plaintiff's

15   interests are fully aligned with the Class in seeking meaningful injunctive and monetary relief. (*Id.* ¶¶

16   3, 4.) Additionally, Plaintiff has actively participated in this litigation by working with Class Counsel,

17   assisting in discovery, sitting for deposition, and evaluating the terms of the Settlement to ensure it is

18   fair, reasonable, and in the best interests of the Class. (*See id.* ¶ 3.) Plaintiff understands and accepts

19   his obligations as a class representative and has demonstrated a commitment to advocating on behalf

20   of the Class. (*Id.*)

21        Furthermore, Plaintiff is represented by experienced Class Counsel who have extensive

22   expertise in complex class action litigation, including consumer protection and false advertising cases.

23   (ECF Nos. 95-15, 95-16.) Class Counsel have vigorously prosecuted this action, successfully obtained

24   class certification, and engaged in substantial discovery and motion practice, including defeating

25   Defendant's motion for summary judgment. (Sodaify Decl. ¶¶ 6-9.) Their experience and demonstrated

26   success in this case ensure that the Settlement Class is well-represented.

27        In sum, Plaintiff has no conflicts of interest with the Class and is represented by highly qualified

28   and experienced counsel who have vigorously prosecuted this case on behalf of consumers. This Court

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

has already determined that both Plaintiff and Class Counsel meet the adequacy requirement. (ECF No. 189 at 7:25 ("The plaintiff and his counsel satisfy the adequacy requirement.")). Because nothing has changed to undermine this Court's prior finding, the Court should reaffirm its previous ruling and find that Plaintiff and Class Counsel remain adequate representatives for the Settlement Class.

### B.    The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These requirements were intended to cover cases where a class action "would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Products, Inc.*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment). Both requirements are met here.

### 1.    Common Questions Predominate Over Questions Affecting Individual Class Members

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to this question is "the notion that the adjudication of common issues will help achieve judicial economy." *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *amended* 273 F. 3d 1266 (9th Cir. 2001).

The predominance requirement of Rule 23(b)(3) is met when common legal and factual issues present a significant aspect of the case and can be resolved for all class members in a single adjudication. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009). The key issues in this litigation include whether Defendant's labeling and advertising claims were false or misleading, whether those claims deceived reasonable consumers, and whether Class

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Members suffered a financial loss as a result. (ECF No. 26 ¶ 59.) These issues are common to the entire Class and predominate over any individualized inquiries. *See Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004) (certifying class where common issues included whether product design was defective, whether the defendant knew of the defect, and whether it had a duty to disclose); *Banks v. Nissan N. Am., Inc.*, 301 F.R.D. 327, 335 (N.D. Cal. 2013) (same). Furthermore, the question of whether Defendant's conduct violated California's consumer protection statutes and other applicable legal theories (*e.g.*, breach of express warranty and unjust enrichment) is a legal issue that will be resolved based on common proof, such as Defendant's product labels, marketing materials, and internal documents regarding consumer perception and product safety. (*See* ECF No. 26 ¶¶ 66-161.)

Since the principal liability issues can be resolved on a class-wide basis and do not require individualized inquiries into each consumer's experience, common questions of law and fact predominate, and certification under Rule 23(b)(3) is appropriate.

### 2. The Class Is Superior to Alternative Methods for Resolving This Controversy

Rule 23(b)(3) requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth four factors for consideration:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in this forum; and (D) the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3). However, when evaluating class certification in the settlement context, courts do not need to consider manageability concerns related to trial. *Amchem Prods., Inc.*, 521 U.S. at 619.

A class action in this instance is the most fair and efficient method for resolving the claims of Settlement Class Members. Given the relatively small financial loss suffered by each individual Class Member stemming from Defendant's alleged misrepresentations regarding the Products, few, if any, would have the resources or incentive to pursue individual litigation. As the Supreme Court has recognized, class actions allow plaintiffs to pool claims that would be uneconomical to litigate

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1  individually, while ensuring that individuals who otherwise could not afford to bring claims still have
2  access to justice. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[C]lass actions . . .
3  permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such
4  a case,] most of the plaintiffs would have no realistic day in court if a class action were not available.").

5      Moreover, allowing thousands of individual lawsuits to proceed separately would create an
6  enormous burden on the courts that would lead to duplicative litigation, inconsistent rulings, and
7  unnecessary expenditure of judicial resources. A nationwide settlement class ensures a uniform
8  resolution for all affected consumers while avoiding the inefficiencies of piecemeal litigation. *See*
9  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (finding that class
10  certification was appropriate where "recovery on an individual basis would be dwarfed by the cost of
11  litigating on an individual basis").

12      Concentrating the litigation in this forum is also desirable because the Court has already certified
13  a California class, overseen extensive litigation, and ruled on key substantive motions, including
14  Defendant's motion for summary judgment and Plaintiff's motion for class certification. (*See* ECF Nos.
15  186, 189.) The Court is well-versed in the legal and factual issues at issue in this case, and so this forum
16  is ideal for final resolution. For these reasons, class-wide resolution through a settlement class is the
17  most practical, efficient, and fair method of adjudicating the claims, and the superiority requirement of
18  Rule 23(b)(3) is satisfied.

19  **V.    THE PRELIMINARY APPROVAL STANDARD IS SATISFIED**

20      Public policy strongly favors settlement as a method to resolve litigation. *See Utility Reform*
21  *Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in
22  complex class actions like this one, where "substantial resources can be conserved by avoiding the
23  time, cost, and rigors of formal litigation." *Fontes v. Heritage Operating, L.P.*, 2016 WL 1465158,
24  at *3 (S.D. Cal. Apr. 14, 2016) (citation omitted); *see also In re Synoc ERISA Litig*., 516 F.3d 1095,
25  1101 (9th Cir. 2008) (Public policy "strong[ly] . . . favors settlements, particularly where complex
26  class action litigation is concerned."); *Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir.
27  1989) ("[O]verriding public interest in settling and quieting litigation" is "particularly true in class
28  action suits." (internal quotations omitted)).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Courts evaluate class action settlements through a two-step process: (1) preliminary approval, followed by (2) final approval after a fairness hearing. Manual for Complex Litigation § 21.632. (4th ed. 2004). At the preliminary approval stage, the Court determines whether the proposed settlement is fair, reasonable, and adequate. *Id.*; *see also* Fed. R. Civ. P. 23(e). A proposed settlement should be preliminarily approved if it (1) appears to be the product of serious, informed, and non-collusive negotiations; (2) does not improperly grant preferential treatment to the named plaintiff or a subset of the class; (3) falls within the range of possible approval; and (4) contains no obvious deficiencies. *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *7 (N.D. Cal. Mar. 18, 2015); *Gatchalian v. Atl. Recovery Sols., LLC*, 2023 WL 8007107, at *7 (N.D. Cal. Nov. 16, 2023).

At the final approval stage, the Court will consider several factors, including: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class certification throughout trial; the amount offered in settlement; the extent of discovery completed and the state of proceedings; the experience and views of counsel; and the reaction of class members to the settlement. *See Lilly*, 2015 WL 1248027, at *7. In some cases, one factor alone may be sufficient to support approval. *Curtis-Bauer v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 4667090, at *3 (N.D. Cal. Oct. 22, 2008) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

An evaluation of the preliminary approval factors here demonstrates that the Settlement is fair, reasonable, and adequate. The Court should therefore grant preliminary approval and authorize the dissemination of notice to the Class.

## A.    The Settlement Resulted from Serious, Informed, Non-Collusive Arm's Length Negotiations

Courts consider whether Class Counsel had adequate information to evaluate the strengths and risks of the case before reaching a settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. This case has been actively litigated for nearly five years, during which Class Counsel engaged in extensive discovery and motion practice. (Sodaify Decl. ¶¶ 4-9.) The litigation included depositions of Plaintiff and Defendant's Rule 30(b)(6) witnesses, as well as their experts, the production and review of thousands of pages of documents, and the exchange of expert reports. (*Id.*

¶ 6.) In addition, the parties briefed and argued multiple substantive motions, including Defendant's motion to dismiss, motion for summary judgment, and motion for class certification. (*Id.* ¶¶ 7-9.) As a result, Class Counsel has had ample opportunity to analyze the Court's rulings, assess the strengths and risks of continued litigation, and determine that settlement is in the best interest of the Class.

Despite the extensive discovery and motion practice, continued litigation presented significant risks to class-wide recovery. Although Plaintiff remains confident in the strength of his claims, Defendant has vigorously disputed liability and maintains that the science does not support Plaintiff's allegations. Defendant was prepared to argue, as it has in the past, that the Products are properly labeled, that consumers were not misled, and that Plaintiff's expert testimony was insufficient to establish deception or injury on a class-wide basis. (*See, e.g.*, ECF Nos. 29, 116, 163, 199.) At trial, these issues would have resulted in a battle of experts, which is inherently risky and unpredictable for both sides. Even if Plaintiff prevailed at trial, Defendant would likely challenge class-wide damages, appeal an adverse judgment, and continue fighting certification. Because of these risks, the Settlement secures injunctive and monetary relief now, rather than leaving Class Members' recovery to the unpredictability of trial and potential appellate proceedings.

The Settlement secures injunctive relief, a remedy that directly addresses the allegations in this case by requiring Defendant to remove the "Non-Toxic" representation from its labeling and modifying the "Earth Friendly" claim with a qualifying disclosure. (Ex. A § 5.1.) Additionally, the Settlement provides a $1.5 million non-reversionary fund to compensate Class Members for their overpayment of the Products. (*Id.* § 2.1.)

Importantly, settlements that follow meaningful discovery and arms-length negotiations are presumed fair. *See In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008); *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *13 (C.D. Cal. May 7, 2009). This Settlement was reached only after the parties engaged in a mediation session and months of rigorous negotiations. (Sodaify Decl. ¶ 10.) The parties participated in a full-day mediation with Hunter Hughes, an experienced and highly respected mediator, and continued negotiations for several months thereafter with the continued involvement of Mr. Hughes. (*Id.*) The presence of an experienced neutral

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

mediator throughout these negotiations further supports the fairness of the Settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("[The] presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness."); *Kline v. Dymatize Enters., LLC*, 2016 WL 6026330, at *5 (S.D. Cal. Oct. 13, 2016) ("That the settlement was reached with the assistance of an experienced mediator further suggests that the settlement is fair and reasonable.").

As a result of this litigation and the mediation process, Class Counsel fully investigated the claims and defenses, which allowed them to candidly assess the risks and benefits of settlement. (Sodaify Decl. ¶ 10.) Where, as here, a settlement is reached through arms-length negotiations conducted by experienced counsel, courts apply a presumption of fairness. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). This factor therefore strongly supports preliminary approval of the Settlement.

### B.    The Settlement Does Not Provide Preferential Treatment

The Settlement provides both monetary and injunctive relief to all Settlement Class Members, thereby ensuring that no subset of the Class receives preferential treatment. The injunctive relief requires that Defendant remove the "Non-Toxic" representation from the Products and modify the "Earth Friendly" claim with a qualifying disclosure (Ex. A § 5.1.) This injunctive relief benefits all Class Members equally.

Although Plaintiff intends to request an incentive award of $5,000 for his role as Class Representative, the Ninth Circuit has held that service awards are permissible and do not render a settlement unfair or unreasonable. *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). While the requested incentive award may be greater than the individual monetary relief received by some Class Members, "[i]ncentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives." *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *4 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F.3d 1106 (9th Cir. 2020) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)).

//

Plaintiff has actively participated in the litigation, sat for a deposition, assisted with discovery, and maintained regular contact with Class Counsel throughout the case. (ECF No. 95-2 ¶ 3.) The substantial relief secured for the Class reflects his efforts over several years, and the requested incentive award is proportionate to his involvement. Courts have approved similar or higher service awards where plaintiffs dedicated substantial time assisting counsel, sitting for depositions, or participating in mediation. *See, e.g.*, *Rivera v. Agreserves, Inc.*, 2016 WL 5395900, at *8 (E.D. Cal. Sept. 26, 2016) (affirming $7,500 award where plaintiff "spent a substantial amount of time assisting counsel and participating in the litigation," including sitting for a deposition and attending mediation); *Bruno v. Quten Rsch. Inst., LLC*, 2013 WL 990495, at *3 (C.D. Cal. Mar. 13, 2013) (affirming $8,000 award where plaintiff "submitted to depositions, investigations, and an involved litigation schedule").

Because the Settlement provides uniform benefits to all Class Members and any incentive award is justified by Plaintiff's efforts, this factor weighs in favor of granting preliminary approval.

## C.    The Settlement Falls Within the Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," courts focus on its substantive fairness and adequacy by weighing the expected recovery against the value of the settlement. *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). Here, the Settlement provides both injunctive and monetary relief that directly addresses the claims asserted in this Action and makes it a fair and reasonable resolution.

Plaintiff alleges that Defendant deceptively marketed and labeled the Products as "Non-Toxic" and "Earth Friendly" despite the presence of ingredients that could cause harm to humans, animals, or the environment. (ECF No. 26 ¶¶ 10-11, 29-38.) The injunctive relief obtained in the Settlement ensures that Defendant will remove the "Non-Toxic" representation from the Products and modify the "Earth Friendly" claim with a qualifying disclosure to prevent Defendant from engaging in similar conduct in the future. (Ex. A § 5.1.) Courts have approved settlements that secure similar injunctive relief to stop deceptive practices and ensure transparency in labeling. *See Grant v. Capital Mgmt. Servs., L.P.*, 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014) (approving a

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

settlement that stopped the allegedly unlawful practices and barred the defendant from similar practices in the future).

Additionally, this Settlement provides significant monetary relief through a $1.5 million non-reversionary fund that will compensate Class Members who submit valid claims. (Ex. A § 2.1.) Unlike cases where only injunctive relief is provided, this Settlement secures both meaningful business practice changes and direct financial compensation for affected consumers. Class Members who submit valid claims with proof of purchase will receive $1.00 per Product purchased, with no cap on the number of claims. (*Id.* § 4.1.3.) Those who submit claims without proof of purchase are eligible to receive $1.00 per product for up to eight (8) products per household. (*Id.*) If the total value of approved claims exceeds the available funds, payments will be reduced pro rata to ensure equitable distribution among claimants. (*Id.* § 4.1.5.) Conversely, if total claims are less than the available funds, payments will be increased pro rata, subject to a cap of two times the original per-product claim amount (*i.e.*, a maximum of $2.00 per product). (*Id.*)

The Settlement was reached through rigorous arms-length negotiations facilitated by an experienced mediator, Hunter Hughes, and follows extensive litigation, including class certification, discovery, and motion practice. (Sodaify Decl. ¶¶ 6, 10, 11.) Courts have found that settlements reached after substantial litigation and formal mediation are strong indicators of fairness and adequacy. *See Dennis v. Kellogg Co.*, 2013 WL 1883071, at *5 (S.D. Cal. May 3, 2013) (finding that a settlement was "within the range of possible approval" where "it appears to be the product of arms-length negotiations by experienced counsel, was reached after considerable litigation and discovery into the asserted claims, and provides . . . relief").

Moreover, given the risks associated with continued litigation (such as the possibility of Defendant prevailing on further motions or at trial) this Settlement provides a fair compromise that offers immediate and tangible benefits to the Class. Similar settlements have been approved where injunctive relief meaningfully addresses the alleged deceptive practices and monetary relief is provided to affected consumers. *See In re Ferrero Litig.*, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012), *aff'd*, 583 F. App'x 665 (9th Cir. 2014) (approving settlement where "Defendant agreed to modify the product label to address the fundamental claim raised in Plaintiffs' complaint"); *Carr*

*v. Tadin, Inc.*, 2014 WL 7497152, at *7 (S.D. Cal. Apr. 18, 2014) (approving settlement with no monetary relief where "the injunctive relief offered will provide the Settlement Class with the relief they most desire—a change in product labeling"); *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *5 (N.D. Cal. Nov. 16, 2015) (approving settlement that required substantial revisions to product labeling).

Given the combination of monetary and injunctive relief, the procedural fairness of the negotiations, and the risks associated with further litigation, the Settlement is well within the range of possible approval and warrants preliminary approval.

### D.    The Settlement Has No Deficiencies

A settlement is generally considered fair and reasonable when it provides immediate relief while also mitigating the risks and uncertainties of continued litigation. *See Stathakos v. Columbia Sportswear Co.*, 2018 WL 582564, at *5 (N.D. Cal. Jan. 25, 2018) (approving settlement where "continued litigation could not result in any greater injunctive relief to the class and would only deprive the class of immediate relief"); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 ("Based on th[e] risk and the anticipated expense and complexity of further litigation, the court cannot say that the proposed settlement is obviously deficient.").

Here, the injunctive relief secured through the Settlement represents a strong outcome for the Class. Under the Settlement, Defendant will remove the "Non-Toxic" representation from the Products and modify the "Earth Friendly" claim with a qualifying statement. (Ex. A § 5.1.) These changes directly address Plaintiff's allegations that Defendant's labeling and marketing were deceptive and misleading to consumers. (*See generally* ECF No. 26.) The relief aligns with Plaintiff's goals for this litigation and ensures that Defendant's labeling practices are transparent to prevent similar representations in the future.

Additionally, unlike settlements that provide only injunctive relief, this Settlement also includes a $1.5 million non-reversionary fund to compensate Class Members who submit valid claims. (Ex. A § 2.1.) The combination of label modifications and monetary relief ensures that the Settlement Class receives a meaningful and secured benefit, which could be delayed or uncertain if the litigation continued, particularly given the risks associated with trial and appeal. *See Lilly v.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Jamba Juice Co.*, 2015 WL 2062858, at *4 (N.D. Cal. May 4, 2025) (approving settlement providing solely injunctive relief where only a Rule 23(b)(2) class was certified); *Goldkorn v. County of San Bernardino*, 2012 WL 476279, at *6-7 (C.D. Cal. Feb. 13, 2012) (approving settlement providing injunctive relief, attorneys' fees, costs, and damages to named plaintiffs).

The Settlement fully addresses Plaintiff's allegations, provides both injunctive and monetary relief, and avoids any obvious substantive deficiencies, it is therefore fair, reasonable, and supports preliminary approval.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiff proposes the following schedule of events leading to the Fairness Hearing:

| Event | Date |
|---|---|
| Deadline for Settlement Website to go live | 21 calendar days following entry of this Preliminary Approval Order |
| Deadline to commence Notice Plan ("Settlement Notice Date") | 21 calendar days following entry of this Preliminary Approval Order |
| Deadline for Claim Forms to be postmarked or submitted online | 60 calendar days after the Settlement Notice Date |
| Deadline for Objections to be postmarked | 60 calendar days after the Settlement Notice Date |
| Deadline for Opt-Out Requests to be postmarked | 60 calendar days after the Settlement Notice Date |
| Deadline for Plaintiff's application for attorneys' fees and costs and Plaintiff's service award | 30 calendar days after Settlement Notice Date |
| Deadline for Plaintiff to file motion for final approval of class action settlement | 14 calendar days prior to Final Approval Hearing |

| Deadline for Parties to file all papers in response to any timely and valid Objections | 14 calendar days prior to Final Approval Hearing |
|---|---|
| Final Approval Hearing | 120 calendar days after entry of this Preliminary Approval Order of class action settlement (or the earliest date thereafter available on the Court's calendar) |

## VII.    <u>CONCLUSION</u>

For the reasons discussed above, this unopposed Motion for Preliminary Approval should be granted, and the Court should enter the Proposed Order submitted herewith.

Dated: February 24, 2025

**CLARKSON LAW FIRM, P.C.**

By: */s/ Bahar Sodaify*
    Ryan J. Clarkson
    Bahar Sodaify
    Alan Gudino

**MOON LAW APC**

By: */s/ Christopher D. Moon*
    Christopher D. Moon
    Kevin O. Moon

    *Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265