**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Ave., 3rd Fl
Palo Alto, California 94301
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiff and the Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BUSH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUST-OLEUM CORPORATION,<br><br>Defendant. | Case No. 3:20-cv-03268-LB<br>Complaint Filed: May 13, 2020<br>FAC Filed: August 24, 2020<br><br>*Assigned for all Purposes to Hon. Laurel Beeler, United States Magistrate Judge*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Information:<br>Date: September 25, 2025<br>Time: 9:30 a.m.<br>Courtroom: B |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 25, 2025, at 9:30 a.m., in Courtroom B of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, the Honorable Laurel Beeler presiding, Plaintiff Anthony Bush, on behalf of himself, the general public, and all others similarly situated, by and through his counsel Ryan J. Clarkson, Bahar Sodaify, and Alan Gudino of Clarkson Law Firm, P.C., and Christopher D. Moon and Kevin O. Moon of Moon Law APC, shall and hereby do move the Court, pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure, for an order:

(A) awarding Class Counsel fees in the amount of $500,000;

(B) reimbursing litigation costs in the amount of $284,640.78; and

(C) granting Service Award to Court-appointed Class Representative, Anthony Bush, in the amount of $5,000.

The Motion is based on this notice of motion; the concurrently-filed memorandum of points and authorities; the concurrently-filed declarations of Class Counsel Ryan J. Clarkson and Christopher D. Moon, and all exhibits thereto; the concurrently filed declaration of Plaintiff Anthony Bush; the parties' Settlement preliminarily approved on April 17, 2025 (ECF No. 227); all prior pleadings, orders, and proceedings; and any additional evidence and argument submitted in support of the Motion.

A Proposed Order Awarding Attorneys' Fees and Costs and Service Award is submitted concurrently herewith.

Dated: June 9, 2025

**CLARKSON LAW FIRM, P.C.**
By: */s/ Ryan J. Clarkson*
Ryan J. Clarkson
Bahar Sodaify
Alan Gudino

**MOON LAW APC**
By: */s/ Christopher D. Moon*
Christopher D. Moon
Kevin O. Moon

*Attorneys for Plaintiff and the Settlement Class*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

<u>Page No.</u>

I.    INTRODUCTION ................................................................................................ 1

II.   BRIEF PROCEDURAL OVERVIEW ............................................................... 2

III.  PLAINTIFF IS THE PREVAILING PARTY AND IS ENTITLED TO AN AWARD OF
      ATTORNEYS' FEES AND COSTS ................................................................... 3

IV.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER CALIFORNIA
      LAW AND THE FEDERAL RULES ................................................................. 4

      A.    The Percentage-of-the-Fund Method Strongly Supports the Requested Fee ............. 5

            i.    The Results Achieved for the Class Are Substantial ............................................ 6

            ii.   The Significant Risks of Continued Litigation Warrant a Full Award ................ 7

            iii.  The Complexity and Novelty of the Issues Favor the Requested Award ............ 8

            iv.   The Skill, Diligence, and Quality of Counsel's Work Support the Requested
                  Award ................................................................................................................. 9

            v.    The Contingent Nature of the Representation Weighs in Favor of the Requested
                  Fee ..................................................................................................................... 10

      B.    The Lodestar Cross-Check Further Confirms the Reasonableness of the Requested
            Fee ..................................................................................................................... 10

            i.    Class Counsel's Hours Were Reasonably Expended ......................................... 11

            ii.   Class Counsel Worked at Reasonable Hourly Rates......................................... 12

V.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY
      INCURRED......................................................................................................... 15

VI.   THE REQUESTED SERVICE AWARD FOR PLAINTIFF IS REASONABLE................ 16

VII.  CONCLUSION....................................................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

| <u>Cases</u> | <u>Page No.</u> |

*Arnold v. DMG Mori USA, Inc.*,
  2022 WL 18027883 (N.D. Cal. Dec. 30, 2022) ............................ 14

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ............................................ 6, 10

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ................................................. 13

*Campbell v. Facebook, Inc.*,
  2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ........................ 12, 17

*Chaudhry v. City of Los Angeles*,
  751 F.3d 1096 (9th Cir. 2014) ............................................... 13

*Chavez v. Netflix, Inc.*,
  162 Cal. App. 4th 43 (2008) .................................................. 6

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) .......................... 14

*Franco v. Ruiz Food Prods.*,
  2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012) ......... 10

*G.F. v. Contra Costa Cty.*,
  2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) .......................... 13

*Glass v. UBS Fin. Servs., Inc.*,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
  *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ................................. 17

*Graciano v. Robinson Ford Sales*,
  144 Cal. App. 4th 140 (2006) ................................................ 4

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................... 4

*Harbour v. Cal. Health & Wellness Plan*,
  2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ............................ 13

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .................................................... 15

*Harris v. Vector Marketing Corp.*,
  2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ............................. 17

*Hartles v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ........................................... 13

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................... 13

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ......................................................................................... 11

*Hezi v. Celsius Holdings, Inc.*,
  2023 WL 2786820 (S.D.N.Y. Apr. 5, 2023) ................................................... 14

*Hopkins v. Stryker Sales Corp.*,
  2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) ................................ 10

*In re Activision Securities Litigation*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................. 5

*In re Bluetooth Headset Prods. Liab. Litig*,
  654 F.3d 935 (9th Cir. 2011) ................................................................... 4, 5, 10

*In re Equity Funding Corporation Securities Litigation*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................. 7

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .............................. 10

*In re Mercury Interactive Corp.*,
  618 F.3d 988 (9th Cir. 2010) ............................................................................ 4

*In re Pacific Enterprises Securities Litig.*,
  47 F.3d 373 (9th Cir. 1995) .............................................................................. 6

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. 2007) .............................................................. 11

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................................ 8

*In re Yahoo Email Litig.*,
  2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ................................................ 17

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) ........................................................................ 13

*Kim v. Euromotors West/The Auto Gallery*,
  149 Cal. App. 4th 170 (2007) ........................................................................... 3

*Laffitte v. Robert Half Int'l Inc.*,
  1 Cal. 5th 480 (2016) .................................................................................... 5, 6

*Mobile Emergency Hous. Corp. v. HP Inc.*,
  2025 U.S. Dist. LEXIS 49585 (N.D. Cal. Mar. 18, 2025) ............................. 12

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ....................................................................... 5, 11

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................................... 16

*Rollins v. Dignity Health*,
  2022 WL 20184568 (N.D. Cal. July 15, 2022) .............................................. 13

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Schiller v. David's Bridal, Inc.*,
  2012 WL 2117001 (E.D. Cal. June 11, 2012) ................................................................. 11

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) ...................................................................................... 16

*Singer v. Becton Dickinson and Co.*,
  2010 WL 2196104 (S.D. Cal. June 1, 2010) ................................................................... 4, 6

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) .............................................................................................. 6

*Staton v. Boeing*,
  327 F.3d 938 (9th Cir. 2003) ......................................................................................... 4, 15

*Taylor v. Shutterfly, Inc.*,
  2021 U.S. Dist. LEXIS 237069 (N.D. Cal. Dec. 7, 2021) ............................................... 12

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ............................................................................. 16, 17

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) ......................................................................................... 6

*Vianu v. AT&T Mobility LLC*,
  2022 U.S. Dist. LEXIS 203520 (N.D. Cal. Nov. 8, 2022) ............................................... 11

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................................... *passim*

## California Codes

Cal. Civil Code § 1780(e) ........................................................................................................ 3

## Federal Rules

Fed. R. Civ. P. 23 ................................................................................................................. 2, 4

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Anthony Bush ("Plaintiff"), through Class Counsel, respectfully moves the Court for an award of attorneys' fees in the amount of $500,000 and reimbursement of litigation costs totaling $284,640.78 incurred in the successful prosecution and resolution of this complex class action against Defendant Rust-Oleum Corporation ("Defendant"), together with a service award of $5,000 (collectively, the "Fee, Costs, and Service Award").

Over five years of rigorous litigation, Class Counsel dedicated substantial time, expertise, and resources to securing a Settlement that delivers significant injunctive relief and monetary relief to consumers nationwide. The Settlement, which was preliminarily approved by this Court earlier this year, requires Defendant to remove the "Non-Toxic" claim from all Krud Kutter product labels and to qualify the "Earth Friendly" representation. The Settlement also established a $1.5 million non-reversionary fund to provide eligible Class Members with direct monetary relief.

The Fee, Costs, and Service Award is supported by these results, permitted under the terms of the Settlement in the Court's discretion, and consistent with fee awards in similar cases within this District. The complexity and duration of this litigation further justifies the requested relief. The case involved intricate scientific analysis, and the five years of litigation required extensive fact and expert discovery, class certification briefing, the development of science-based and other expert reports, both original and rebuttal, to counter Defendant's roster of experts, motions to exclude expert testimony, and contested summary judgment proceedings.

The relief secured via the Settlement would not have been possible without Mr. Bush's substantial efforts, personal commitment, and ongoing involvement for over five years, together with Class Counsel's highly-skilled advocacy at every functional stage of this litigation. Class Counsel advanced hundreds of thousands in resources, without any guarantee of any recovery, including funding critical scientific and damages experts. After five years of litigation, the injunctive relief obtained directly addresses the central allegations in the lawsuit, protecting consumers nationwide, while the Settlement also provides monetary compensation for all eligible consumers.

For these reasons, as explained in more detail below, the Fee, Costs, and Service Award is justified under Rule 23(h), and Plaintiff respectfully requests that the Court grant this motion in full.

## II.    BRIEF PROCEDURAL OVERVIEW

Plaintiff filed this class action on May 13, 2020, in the Northern District of California, alleging that Defendant's Krud Kutter cleaning products were falsely marketed as "Non-Toxic" and "Earth Friendly." *See generally* ECF No. 26. The case was brought on behalf of a class of consumers asserting claims for violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"), as well as for breach of express warranty and unjust enrichment. *Id.* ¶¶ 66-161. Over the course of more than five years, Plaintiff and Class Counsel devoted substantial time and resources to investigate the claims, pursue discovery, brief class certification, motions to dismiss, and for summary judgment, and prepare expert testimony. *See* Declaration of Ryan J. Clarkson ("Clarkson Decl.") ¶¶ 14-25. The litigation was hard-fought at every stage, including extensive fact and expert discovery, multiple dispositive motions, and a mediation session before experienced mediator Hunter Hughes, Esq. of Alternative Dispute Resolution. *Id.* ¶¶ 24, 25.

Following over six months of arms-length negotiations overseen by Mr. Hughes, the parties reached a comprehensive settlement that provides for significant injunctive relief and a $1.5 million non-reversionary settlement fund to benefit the nationwide Settlement Class. *Id.* ¶¶ 25, 30; *see also* Clarkson Decl., Ex. A (Settlement Agreement) §§ 2.1, 5.1. The Court granted preliminary approval of the Settlement on February 24, 2025, finding it fair, reasonable, and adequate under Rule 23(e), and certifying the nationwide Settlement Class. ECF No. 227. Since that time, notice has been disseminated to the Settlement Class as ordered by the Court, a dedicated settlement website has been launched, the claims process has been implemented to allow Class Members to review the settlement terms and submit claims for monetary relief, and CAFA notice has been served on the appropriate state and federal officials. *See* Clarkson Decl. ¶ 26.

In accordance with the Settlement Agreement and the Court's preliminary approval order, the Fee, Costs, and Service Award timely sought by this Motion includes an award of attorneys' fees in the amount of $500,000, reimbursement of litigation costs incurred over the five years of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

litigation in the amount of $284,640.97, and a $5,000 service award to Plaintiff Bush in recognition of his years-long commitment and efforts as Class Representative. Clarkson Decl. ¶¶ 11-13. As set forth in the supporting declarations of Ryan J. Clarkson and Christopher D. Moon, Class Counsel's fee and costs request is justified in light of the results achieved, the complexity and duration of the litigation, the risks undertaken on a contingent basis, and prevailing standards in this District.

## III. PLAINTIFF IS THE PREVAILING PARTY AND IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS

Under California Civil Code § 1780(e), a prevailing plaintiff in an action brought under the CLRA is entitled to recover attorneys' fees and costs as a matter of right: "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." Courts have consistently interpreted this mandate as compulsory, emphasizing the CLRA's consumer protection purpose. *See Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178 (2007).

Plaintiff brought this action to stop Defendant's deceptive marketing of its Krud Kutter cleaning products as "Non-Toxic" and "Earth Friendly." *See generally* ECF No. 26. Plaintiff alleged that these representations were misleading because the products contain ingredients inconsistent with such claims and convey an overall deceptive impression regarding product safety and environmental impact. *Id*. ¶¶ 1–10, 14–20.

The Settlement directly addresses these core allegations and secures substantial relief that both compensates consumers for past harm and protects them from future deception. Defendant has agreed to remove the "Non-Toxic" claim from all Krud Kutter product labeling and packaging at issue. *See* Clarkson Decl., Ex. A § 5.1. Additionally, the "Earth Friendly" representation will be meaningfully qualified by the addition of an asterisk on the front label, directing consumers to language in the back label clarifying that the product "Contains no inorganic phosphates, hazardous solvents or environmentally harmful surfactants," or similar qualifying language. *Id.* These injunctive measures provide significant forward-looking relief by requiring more accurate product labeling and advertising—one of the primary goals of the litigation.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1
2
3
4
5
6

The Settlement also provides for direct monetary compensation through a $1.5 million non-reversionary common fund. *Id.* § 2.1. Class Members who submit valid claims with proof of purchase are eligible to receive $1.00 per product purchased, with no cap on the number of products claimed, while those without proof of purchase are eligible to receive $1.00 per product for up to eight products per household. *Id.* § 4.1.3. This monetary relief compensates Class Members for past economic harm and represents a tangible, quantifiable benefit delivered to the Class.

7
8
9
10
11
12
13

Taken together, the injunctive and monetary components of the Settlement fulfill the central objectives of this litigation—ensuring truthful marketing practices and redressing consumer injury. Accordingly, Plaintiff is properly deemed the prevailing party and is entitled to an award of attorneys' fees and costs under the CLRA. *See Graciano v. Robinson Ford Sales*, 144 Cal. App. 4th 140, 153 (2006) (noting that plaintiffs may be considered prevailing parties for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit).

14
15

## IV.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER CALIFORNIA LAW AND THE FEDERAL RULES

16
17
18
19

Pursuant to Federal Rule of Civil Procedure 23(h), the Court may award reasonable attorneys' fees and nontaxable costs "authorized by law and by agreement of the parties." The Ninth Circuit requires district courts to "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing,* 327 F.3d 938, 963 (9th Cir. 2003).

20
21
22
23
24
25
26
27
28

In common fund cases such as this one, courts in the Ninth Circuit may use either the percentage-of-the-fund or the lodestar method to determine whether the requested fee is reasonable. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("[T]he district court has discretion to use either a percentage or lodestar method."); *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). In class action settlements involving a common fund, courts routinely use the percentage-of-the-fund method and often approve fee awards of one-third or more when warranted. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving 33.33% fee). The lodestar method, by contrast, involves multiplying the hours reasonably expended

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1    on the case by counsel's reasonable hourly rates. *In re Bluetooth Headset Prods. Liab. Litig.*, 654

2    F.3d at 942. Courts frequently apply a multiplier to account for the risks class counsel undertook

3    and the results achieved, and a fee award at or below the lodestar is presumptively reasonable.

4    *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *Morales v. City of San Rafael*,

5    96 F.3d 359, 363-64 n.8 (9th Cir. 1996).

6        Here, the fee request of $500,000 is reasonable. Under the percentage-of-the-fund approach,

7    the requested award represents one-third of the $1.5 million common fund, which is reasonable after

8    the five years of complex litigation, the significant monetary and injunctive relief obtained for the

9    Class, and the substantial risks assumed by Class Counsel throughout the case. Recovery under the

10   percent-of-fund approach is also supported by a lodestar cross-check. The requested fee represents

11   a significant discount from the actual hours Class Counsel expended across five years of litigation,

12   resulting in a negative multiplier of 0.31, which further supports the requested fee under controlling

13   authority. *See* cases cited *infra* Section IV.B(i).

14       A.    **The Percentage-of-the-Fund Method Strongly Supports the Requested Fee**

15       Courts in the Ninth Circuit and California regularly use the percentage-of-the-fund approach

16   to evaluate the reasonableness of attorneys' fee requests in common fund class actions. *See In re*

17   *Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989). The California Supreme

18   Court expressly recognized the appropriateness of the percentage method in common fund cases.

19   *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016) ("The recognized advantages of the

20   percentage method—including relative ease of calculation, alignment of incentives between counsel

21   and the class, a better approximation of market conditions in a contingency case, and the

22   encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging

23   the litigation—convince us the percentage method is a valuable tool that should not be denied by

24   our trial courts.") (internal citations omitted).

25       Courts in the Ninth Circuit routinely approve fee awards of 33.33% of the common fund,

26   especially in complex and vigorously litigated cases like this one—where counsel undertook

27   substantial risk, conducted extensive discovery and voluminous document review, litigated

28   contested class certification supported by detailed expert analysis, prevailed against a summary

judgment challenge, and ultimately achieved meaningful and substantial relief for the class in the face of aggressive opposition at nearly every stage. *See* Clarkson Decl. ¶¶ 22-25; *see also Singer*, 2010 WL 2196104, at *8 (approving 33.33% fee where parties engaged in "in extensive informal and formal discovery, investigation, and pre-trial motion practice concerning the facts and the law"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (same); *see also In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee).

Empirical studies further confirm that attorneys' fee awards in class action settlements commonly average around one-third of the recovery. *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that . . . fee awards in class actions average around one-third of the recovery."). While the Ninth Circuit has identified 25% as a general "benchmark" for fee awards, courts frequently award above the benchmark based on the circumstances of each case. *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (finding and approving a fee request of 33% as reasonable); *Singer*, 2010 WL 2196104, at *8 (approving 33.33% fee where parties engaged in " in extensive informal and formal discovery, investigation, and pre-trial motion practice concerning the facts and the law"); *Vasquez,* 266 F.R.D. at 491–92 (same); *In re Pacific Enterprises Securities Litig.*, 47 F.3d at 379 (9th Cir. 1995) (affirming 33% fee).

As explained below, Class Counsel's fee request is also supported by each of the factors courts consider, including (a) the results achieved; (b) the risks of continued litigation; (c) the complexity and novelty of the issues; (d) the skill required and the quality of counsel's work; and (e) the fully contingent nature of the representation. *See Vizcaino*, 290 F.3d at 1047-50; *Laffitte*, 1 Cal. 5th at 503-05.

### i.    *The Results Achieved for the Class Are Substantial*

The most important factor in determining an appropriate fee award is the result achieved for the class. *See Vizcaino*, 290 F.3d at 1048; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Here, the $1.5 million non-reversionary settlement fund represents a significant recovery for consumers. Class members who submit valid proof of purchase can claim $1.00 per product with no cap on the number of units.  Clarkson Decl., Ex. A § 4.1.3. For Class

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

members without proof of purchase—common in retail cases—the Settlement allows recovery for up to 8 products per household, totaling up to $8.00. *Id.* In either case, claims will be subject to an equitable upward or downward adjustment, as necessary, based on the actual claims rate. *Id.* § 4.1.5.

The Settlement also provides meaningful forward-looking relief. It requires Defendant to remove the "Non-Toxic" representation at the core of this litigation and qualify the "Earth Friendly" claim on all covered products nationwide by adding an asterisk, on the front label, directing consumers to language stating, "Contains no inorganic phosphates, hazardous solvents or environmentally harmful surfactants," or similar language. which is meaningful forward-looking relief that addresses the core issues in this litigation. *Id.* § 5.1.

Combined, this relief achieves the primary goals of this litigation—compensating Class Members for past alleged harm with monetary payments and injunctive relief protecting class members (and the public at large) against future deception—results that justify the requested fee award.

None of the Settlement fund will revert to Defendant. Instead, the Settlement provides that unclaimed or excess funds, if any, must be redistributed or directed toward *cy pres* to organizations Earth Justice and Mamavation, ensuring the value remains with the Class by supporting relevant causes. Clarkson Decl. ¶¶ 30, 64. Earthjustice is a nonprofit environmental law organization that uses litigation to protect public health, preserve natural places, and advance clean energy. Mamavation is a consumer watchdog and eco-wellness community focused on truth in advertising and investigating and exposing harmful chemicals in everyday consumer products. They empower families to make safer, healthier choices.

### ii.    The Significant Risks of Continued Litigation Warrant a Full Award

This case presented substantial legal and factual risks from the outset. Defendant is a sophisticated, well-resourced company, represented by highly experienced counsel, and vigorously contested liability and class certification at every stage. *See In re Equity Funding Corporation Securities Litigation*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (finding the quality of opposing counsel is important in evaluating the quality of class counsel's work). Plaintiff's claims required establishing that "Non-Toxic" and "Earth Friendly" statements were likely to mislead reasonable

consumers despite the presence of disclaimers and complex scientific evidence regarding the products' ingredients and safety. Overcoming these challenges required extensive expert work, including expert analysis in chemistry, environmental science, and consumer perception surveys. *See* Clarkson Decl. ¶¶ 56–58.

Moreover, for over five years, Class Counsel litigated this matter on a wholly contingent basis, investing thousands of hours and substantial out-of-pocket costs with no assurance of recovery. Clarkson Decl. ¶¶ 7, 19, 53; Declaration of Christopher D. Moon ("Moon Decl.") ¶ 4. Had Plaintiff been unsuccessful, Class Counsel would have received nothing for their efforts. Courts in the Ninth Circuit recognize that such risk supports a premium fee award; otherwise, few attorneys would undertake complex class actions on behalf of consumers. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1048.

### iii.    The Complexity and Novelty of the Issues Favor the Requested Award

The novelty and complexity of this case strongly supports the reasonableness of the requested fee. Class Counsel faced significant legal and factual challenges in establishing that Defendant's "Non-Toxic" and "Earth Friendly" representations on Krud Kutter cleaning products were misleading, particularly given the technical nature of the Products' chemical ingredients and the evolving standards in consumer labeling law. To address these issues, Class Counsel retained and collaborated with leading experts in chemistry and environmental science to analyze the product formulations and support the allegations regarding ingredient safety and marketing. Clarkson Decl. ¶ 58. Additional experts were engaged to develop and conduct rigorous consumer perception surveys and market research to assess whether and how class members were likely to be misled by the challenged statements. *Id.*

Class Counsel also navigated complex issues regarding the scope of permissible relief and nationwide settlement in a consumer class action context. *Id.* ¶ 57. Ultimately, Class Counsel achieved a nationwide settlement requiring Defendant to revise its advertising and labeling practices and establishing a substantial monetary fund for consumers. *Id.*, Ex. A §§ 2.1, 5.1. Given the complexity of the case, the requested fee is justified.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

###### *iv.      The Skill, Diligence, and Quality of Counsel's Work Support the Requested Award*

The successful outcome in this case is a direct result of Class Counsel's exceptional skill, unwavering diligence, and strategic litigation over the past five years. From the outset, Defendant vigorously contested every phase of the litigation, requiring counsel to meet each challenge with thorough preparation and expert-driven advocacy. Defendant moved to dismiss the complaint and to transfer venue (ECF Nos. 18, 28, 29), opposed class certification (ECF No. 109), sought to stay certification (ECF No. 124), moved for summary judgment (ECF No. 116), and later sought reconsideration of that motion after it was denied (ECF No. 199). Clarkson Decl. ¶¶ 22–25.

Despite Defendant's efforts, Class Counsel prevailed at every critical juncture. They defeated Defendant's motion to dismiss (ECF No. 51) and motion to transfer (ECF No. 40), obtained class certification (ECF No. 189), successfully opposed a stay of certification (ECF No. 127), defeated summary judgment (ECF No. 186), and prevailed on Defendant's motion for reconsideration (ECF No. 207). These results were not accidental—they were the product of rigorous investigation, sophisticated motion practice, and extensive expert analysis that formed the backbone of Plaintiff's case. *See id*. ¶¶ 56-60.

Notably, at the preliminary approval hearing, the Court acknowledged the high quality of the litigation and the clarity with which the case had been presented—further affirming the skill and professionalism of Class Counsel throughout the proceedings. This recognition underscores the significant level of commitment and competence that was necessary to overcome sustained and well-resourced opposition and to ultimately secure meaningful relief for the Class.

Class Counsel's experience in complex class actions and consumer protection litigation enabled them to efficiently identify the key factual and legal issues, streamline discovery, and maximize settlement value for the Class. *See* Clarkson Decl. ¶ 36; Clarkson Decl., Ex. B. The outstanding result obtained for the Class would not have been possible without Class Counsel's specialized skills, persistence, and demonstrated expertise, all of which fully support the reasonableness of the requested fee award. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (approving fee in amount of 33 percent of class recovery in part because

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

case "required specialist skills to litigate the legal theories [] in the case"); *Franco v. Ruiz Food Prods.*, No. 1:10-cv-02354, 2012 U.S. Dist. LEXIS 169057, at *47 (E.D. Cal. Nov. 27, 2012) (awarding fees of 33 percent of settlement amount due to counsel's specialized skills); *In re Heritage Bond Litig.*, CV 02-6512 , 2005 U.S. Dist. LEXIS 13555, at *61 (C.D. Cal. June 10, 2005) (awarding attorneys' fees in the amount of 33 percent of the common fund based in part on the effort, skill and experience of class counsel).

> **v.      The Contingent Nature of the Representation Weighs in Favor of the Requested Fee**

Class Counsel prosecuted this action on a purely contingent basis, advancing all litigation costs and investing thousands of hours over more than five years to secure a favorable outcome for the Class. Clarkson Decl. ¶¶ 7, 19, 53. In doing so, Class Counsel necessarily turned down other matters and shouldered the very real risk of never being compensated for their substantial time or reimbursed for the considerable expenses incurred. *Id.* ¶ 55. Courts have recognized that such contingent fee arrangements justify a substantial award to ensure that consumers are able to attract highly skilled advocates to pursue complex and risky class actions. *See Hopkins v. Stryker Sales Corp.*, 2013 U.S. Dist. LEXIS 16939, at *8 (N.D. Cal. Feb. 6, 2013) ("All of the financial risk of litigation was therefore assumed by class counsel, whose fee arrangement with plaintiffs required class counsel to bear all the costs of litigation."); *Vizcaino*, 290 F.3d at 1049–50. This substantial risk supports the reasonableness of the requested fee award.

> **B.      The Lodestar Cross-Check Further Confirms the Reasonableness of the Requested Fee**

While the percentage-of-the-fund method justifies the requested award, the reasonableness of Class Counsel's fee is further supported by a lodestar cross-check. The lodestar figure is calculated by multiplying the hours spent on the case by the reasonable hourly rates for the region and attorney experience. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941-42. However, the lodestar analysis is not simply a mechanical calculation of hours multiplied by rates. Instead, courts may enhance the lodestar based on factors not already subsumed within the initial calculation, such as the complexity and novelty of the litigation, the results obtained, the skill and experience of

counsel, and awards in similar cases. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983); *Morales*, 96 F.3d at 363–64; *Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 U.S. Dist. LEXIS 203520, at *23 (N.D. Cal. Nov. 8, 2022) (Beeler, J.). Historically, lodestar multipliers in class actions have ranged from 0.6 to 19.6, with the vast majority falling between 1 and 4. *Vizcaino*, 290 F.3d at 1051 n.6.

Here, Class Counsel is not seeking a positive multiplier, but rather a negative multiplier, as the requested fee represents a significant reduction from the actual lodestar incurred. *See* Clarkson Decl. ¶¶ 43, 44; Moon Decl. ¶ 3. This strongly supports the conclusion that the requested fee is fair and reasonable. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel."); *Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *23 (E.D. Cal. June 11, 2012) ("An implied negative multiplier supports the reasonableness of the percentage fee request.").

### i.    *Class Counsel's Hours Were Reasonably Expended*

Class Counsel devoted a total of 2,158.9 hours to this litigation over the course of five years. *See* Clarkson Decl. ¶¶ 14–26, 44; Moon Decl. ¶¶ 3, 4. This work included fact and expert discovery, significant motion practice (including class certification and summary judgment), and extended arm's-length settlement negotiations. Clarkson Decl. ¶¶ 56-58. Given the highly technical and scientific nature of the issues, Class Counsel retained leading experts in chemistry and toxicology, market research, and economics. For example, Dr. Lucy Fraiser provided an expert evaluation of the toxicity and environmental risk of the Krud Kutter products' ingredients and formulations. *See generally* ECF No. 95-4. In support of Plaintiff's damages theory, Dr. J. Michael Dennis designed a conjoint survey methodology to quantify the market price premium attributable to the challenged "Non-Toxic" and "Earth Friendly" claims and submitted an initial and a rebuttal report. *See* ECF Nos. 95-3, 130-1. Additionally, Colin B. Weir, an expert economist, submitted an expert report and collaborated in developing a framework for class-wide damages using Dr. Dennis's survey data. *See* ECF No. 95-5. Plaintiff's experts were also deposed by Defendant. The engagement of multiple experts was necessary to establish class-wide damages, evaluate the scientific claims, and directly

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

counter Defendant's expert submissions. Clarkson Decl. ¶¶ 53-58. Class Counsel's lodestar calculation also does not include additional time that will be required for settlement approval and administration, further underscoring the conservative nature of the request. *Id.* ¶ 42.

The result of this sustained effort was a settlement that requires Defendant to remove or qualify the "Non-Toxic" and "Earth Friendly" representations from the labeling and marketing of Krud Kutter products, and secures meaningful monetary relief for the nationwide Settlement Class. *See id.*, Ex. A §§ 2.1, 5.1. Despite the extensive time and resources expended, Class Counsel requests only $500,000 in attorneys' fees, which represents a substantial reduction by 68.7%, or $ 1,096,737 less than, the total lodestar incurred by both firms ($1,596,737). *See id.* ¶¶ 43, 44; Moon Decl. ¶ 4. This results in a multiplier of 0.31, meaning the requested fee is less than one third of the actual lodestar generated by Class Counsel's work.

Courts in this District have repeatedly found that negative multipliers, like the one here, strongly support the reasonableness of a fee request. *See, e.g.*, *Mobile Emergency Hous. Corp. v. HP Inc.*, No. 5:20-cv-09157-SVK, 2025 U.S. Dist. LEXIS 49585, at *4 (N.D. Cal. Mar. 18, 2025) (concluding that a negative lodestar multiplier of 0.49 "demonstrates the reasonableness of the requested attorneys' fees"); *Taylor v. Shutterfly, Inc.*, No. 5:18-cv-00266-BLF, 2021 U.S. Dist. LEXIS 237069, at *26 (N.D. Cal. Dec. 7, 2021) (finding that the negative lodestar multiplier of 0.51 demonstrated the reasonableness of the requested fee award); *Campbell v. Facebook, Inc.*, 2017 WL 3581179, at *7 (N.D. Cal. Aug. 18, 2017) (approving a $3.89 million fee award where plaintiffs applied a negative multiplier of .497). Considering the substantial time and effort required to achieve these results over five years of litigation, the negative multiplier here provides compelling evidence that the fee sought is fair, reasonable, and fully warranted. Given the significant reduction already incorporated into Class Counsel's request, no further reduction is warranted.

### ii.    Class Counsel Worked at Reasonable Hourly Rates

Class Counsel utilized reasonable hourly rates for each lawyer who staffed the case that are commensurate with rates approved in other class actions litigated in this District. *See* Clarkson Decl. ¶¶ 44, 49-51; Moon Decl. ¶ 4. The hourly rates of Class Counsel here range from $700 to $1,270 for partners, $450 to $895 for associates, and $350 to $415 for litigation support staff. Clarkson

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Decl. ¶ 44; Moon Decl. ¶ 4. The hourly rates fall well within the range that courts within this district have determined to be reasonable. Clarkson Decl. ¶¶ 49-51.

A "reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *see also Hartles v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011) (stating that rates are "reasonable where they [are] similar to those charged in the community and approved by other courts"). Here, the "relevant community" is the Northern District of California. *See, e.g.*, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) ("The relevant community is the forum in which the district court sits.") (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)).

Class Counsel's hourly rates are consistent with the prevailing market rates in the Northern District of California for attorneys of comparable skill, experience, and reputation. These rates have repeatedly been accepted by courts in this District as reasonable for complex class action litigation. Clarkson Decl. ¶¶ 50, 52; *see also* Clarkson Decl., Exs. C-G. For example, this Court awarded fees and costs in a wage and hour class action, finding hourly rates between $400 and $1,500 to be "normal and customary for timekeepers with similar qualifications and experience in the relevant market." *See* Order Granting Final Approval, *Suarez v. Bank of Am., N.A.*, No. 18-cv-01202-LB (N.D. Cal. Jan. 11, 2024, Beeler, J.), ECF No. 217. In *Harbour v. Cal. Health & Wellness Plan*, the court found hourly rates ranging from $425 to $1,200 to be "within the range of those approved in other similar cases, . . ." 2024 WL 171192, at *8 (N.D. Cal. Jan. 16, 2024). In *Rollins v. Dignity Health*, the court held that billing rates between $215 and $1,060 were "reasonable in light of prevailing market rates in this district . . . ." 2022 WL 20184568, at *6 (N.D. Cal. July 15, 2022). Similarly, in *G.F. v. Contra Costa Cty.*, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015), the court approved hourly rates between $175 and $975, noting that rates of $845-$975 for senior attorneys were "in line with the overall range of market rates for attorneys and for litigation support staff of similar abilities and experience." *Id.* at *14; *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals to be reasonable); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving hourly rates

ranging from $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates).

Relatedly, Judge Jeffrey S. White of the Northern District of California recently approved Clarkson Law Firm's requested rates ranging from $990 to $1,210 for partners, $440 to $660 for associates, and $360 for paralegals in granting a $495,000 fee and cost award in a consumer class action settlement involving only injunctive relief. *See* Order Granting Final Approval, *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, Case No. 4:20-cv-09077-JSW (N.D. Cal. Dec. 9, 2024), ECF. No. 150; Clarkson Decl. ¶ 52. Judge White specifically found these rates "fair and reasonable, and consistent with awards in similar cases within the Ninth Circuit." Case No. 4:20-cv-09077-JSW, ECF No. 150 at 6.

Although the Northern District of California is the relevant community for determining reasonable hourly rates, this Court may consider fee awards in other jurisdictions as evidence of reasonableness. *See Arnold v. DMG Mori USA, Inc.*, 2022 WL 18027883, at *3 (N.D. Cal. Dec. 30, 2022) ("Counsel may rely upon their own declarations, fee awards in other cases, and declarations of other attorneys to prove the reasonableness of their rates."). In this regard, the Southern District of New York has approved similar hourly rates for Clarkson Law Firm. In *Hezi v. Celsius Holdings, Inc.*, 2023 WL 2786820, at *6 (S.D.N.Y. Apr. 5, 2023), the court deemed rates of $850 to $1,100 for partners, $425 to $775 for associates, and $300 to $365 for litigation support staff as "fair, reasonable, and consistent with rates accepted within this jurisdiction for complex consumer class actions." Likewise, in *Kandel v. Dr. Dennis Gross Skincare, LLC*, No. 1:23-cv-01967-ER, ECF No. 92 at 9 (S.D.N.Y. Oct. 31, 2024), the court approved rates of $700 to $1,210 for partners, $440 to $850 for associates, and $330 to $360 for litigation support staff. The approval of Class Counsel's rates in other federal district courts weighs in favor of the Court finding Class Counsel's rates in this Action to be reasonable. *Arnold*, 2022 WL 18027883, at *3. ("Counsel may rely upon their own declarations, fee awards in other cases, and declarations of other attorneys to prove the reasonableness of their rates."). Accordingly, both within this District and in other leading jurisdictions, Class Counsel's hourly rates are well supported and reasonable for complex class action litigation of this nature.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

V.    **CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED**

The Ninth Circuit authorizes recovery of pre-settlement litigation costs in the context of a class action settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Here, Class Counsel's out-of-pocket costs were reasonable and necessary to achieve the favorable outcome in this case.

The largest portion of litigation expenses was allocated to expert witness fees—an essential investment without which Plaintiff could not have prevailed at class certification and ultimately secure this meaningful relief for the Class. These fees covered the preparation of both original and rebuttal expert reports, as well as time spent preparing for and sitting for depositions. Each expert played a critical role at key stages of the litigation. Dr. Fraiser evaluated the toxicity and environmental risks associated with the Krud Kutter products' ingredients and formulations, directly supporting Plaintiff's allegations that the "Non-Toxic" and "Earth Friendly" label claims were misleading. *See* ECF No. 95-4. Dr. Dennis developed a choice-based conjoint survey methodology to quantify any market price premium attributable to the challenged label statements (see ECF No. 95-3), while Mr. Weir worked in tandem to create a model for calculating class-wide damages using that survey data (see ECF No. 95-5). These expert opinions formed the evidentiary backbone of Plaintiff's successful motion for class certification and were indispensable in demonstrating both liability and damages on a class-wide basis. *See* Clarkson Decl. ¶¶ 23, 47; Moon Decl. ¶ 5.

In addition to expert fees, Class Counsel incurred significant expenses for deposition and court reporting services, document management and digital storage, and mediation fees. Clarkson Decl. ¶ 47. Other necessary costs included travel, subpoenas, court filing fees, postage, and courier services, all typical in complex class litigation. *See* Clarkson Decl. ¶ 47; Moon Decl. ¶ 5. Importantly, Class Counsel advanced these costs over the course of five years and bore the entire risk of non-recovery. Each of these costs was necessarily and reasonably incurred to bring this case

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1   to a successful conclusion, and they reflect market rates for the various categories of expenses

2   incurred.

3       As a result of these efforts, Class Counsel has incurred out-of-pocket costs and expenses

4   totaling $284,640.78 in prosecuting this litigation on behalf of the Class. *See* Clarkson Decl. ¶ 47;

5   Moon Decl. ¶ 5. These costs and expenses were necessary for the effective prosecution of this case

6   and the achievement of the settlement benefits for the Class. *See* Clarkson Decl. ¶ 48; Moon Decl.

7   ¶ 5. The costs incurred reflect the complex nature of this science-intensive litigation and the

8   formidable resources required to challenge well-funded corporate defendants. The successful

9   outcome achieved further justifies these expenses and validates Class Counsel's strategic decisions

10   throughout the Action. Because the costs were reasonable and necessarily incurred by Class Counsel

11   in the prosecution of this Action, reimbursement is warranted. *See generally e.g., Schneider v.*

12   *Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 602 (N.D. Cal. 2020) (approving costs of $636,556.28

13   in a false advertising consumer class action).

14   **VI.    THE REQUESTED SERVICE AWARD FOR PLAINTIFF IS REASONABLE**

15       Plaintiff seeks a service award of $5,000 in recognition of his efforts on behalf of the

16   Settlement Class. Declaration of Anthony Bush ("Bush Decl.") ¶ 8; Clarkson Decl. ¶ 68. Service

17   awards are common in class actions and serve to compensate representatives for their time, effort,

18   and risks undertaken in pursuing litigation on behalf of absent class members. *Rodriguez v. W.*

19   *Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Whether to grant a service award, and the amount,

20   is within the Court's discretion and depends on factors such as the amount of time and effort devoted

21   to the case, the duration of the litigation, and any personal benefit derived. *See Van Vranken v. Atl.*

22   *Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

23       Since the inception of this Action in May 2020, Plaintiff Bush has actively participated in the

24   litigation and worked closely with Class Counsel for over five years to ensure the case was

25   prosecuted effectively and efficiently. Bush Decl. ¶ 4; Clarkson Decl. ¶ 69. He regularly

26   communicated with counsel; kept himself informed of key case developments; reviewed and

27   provided input on pleadings, motions, and settlement papers; responded to Defendant's discovery

28   requests; prepared for and sat for deposition; and carefully reviewed the terms and benefits of the

Settlement for the Class. Bush Decl. ¶ 4. His continued involvement was critical to the successful resolution of this case and to securing meaningful relief for the Settlement Class.

In this District, service awards of $5,000 are typically considered presumptively reasonable. *See Campbell*, 2017 WL 3581179, at *4, *8 (approving an incentive award of $5,000 in injunctive relief only class settlement); *see also In re Yahoo Email Litig.*, 2016 WL 4474612, at *11-12 (N.D. Cal. Aug. 25, 2016) (approving an incentive award of $5,000 where the class settlement included declaratory and injunctive relief). The requested amount is modest in comparison to service awards approved in other complex class actions. *See, e.g., Van Vranken*, 901 F. Supp. at 299-300 (incentive award of $50,000); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (awarding $100,000 divided among four plaintiffs in overtime wages class action); *Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *8 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 service award).

Plaintiff Bush's substantial commitment and active participation throughout the five years of litigation directly contributed to the excellent result achieved for the Class. Plaintiff therefore respectfully requests that the Court approve the requested $5,000 service award.

## VII. CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court: (1) grant Plaintiff's request for a service award of $5,000; (2) grant Class Counsel's request for attorneys' fees in the amount of $500,000, and (3) grant Class Counsel's request for reimbursement of litigation costs totaling $284,640.78.

Dated: June 9, 2025

**CLARKSON LAW FIRM, P.C.**

By: */s/ Ryan J. Clarkson*
    Ryan J. Clarkson
    Bahar Sodaify
    Alan Gudino

**MOON LAW APC**
By: */s/ Christopher D. Moon*
    Christopher D. Moon
    Kevin O. Moon

*Attorneys for Plaintiff and the Settlement Class*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265