**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Ave., 3rd Fl
Palo Alto, California 94301
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiff and the Settlement Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BUSH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUST-OLEUM CORPORATION,<br><br>Defendant. | Case No. 3:20-cv-03268-LB<br>Complaint Filed: May 13, 2020<br>FAC Filed: August 24, 2020<br><br>*Assigned for all Purposes to Hon. Laurel Beeler, United States Magistrate Judge*<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Information:<br>Date: October 2, 2025<br>Time: 9:30 a.m.<br>Courtroom: B, 15th FL |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 2, 2025, at 9:30 a.m., in Courtroom B of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, the Honorable Laurel Beeler presiding, Plaintiff Anthony Bush will and hereby does move for an Order pursuant to the Federal Rules of Civil Procedure granting final approval of the proposed settlement with Defendant Rust-Oleum Corporation.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declarations of Class Counsel Bahar Sodaify of Clarkson Law Firm, P.C., and Chris Moon of Moon Law APC,  Declarations of Mark Schey of Digital Settlement, LLC, and Bryan Heller of ClaimScore, LLC, any exhibits thereto, the pleadings and records on file in this action, and other relevant matters and argument as the Court may consider at the hearing of this motion.


Dated: September 11, 2025                    **CLARKSON LAW FIRM, P.C.**

By: */s/ Bahar Sodaify*
     Ryan J. Clarkson
     Bahar Sodaify

**MOON LAW APC**

By: */s/ Christopher D. Moon*
     Christopher D. Moon
     Kevin O. Moon

*Attorneys for Plaintiff and the Settlement Class*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# **TABLE OF CONTENTS**

**Page No.**

I.     INTRODUCTION ........................................................................................................ 1

II.    PROCEDURAL OVERVIEW ..................................................................................... 2

III.   SUMMARY OF SETTLEMENT TERMS .................................................................. 3

IV.    SUCCESSFUL COMPLETION OF THE COURT-APPROVED NOTICE PLAN .............. 4

V.     FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ............. 5

VI.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT .............. 6

    A.     Rule 23(e) Factors Are Satisfied in Favor of Final Approval ...................................... 7

        1.     Plaintiff and Class Counsel Adequately Represented the Settlement Class ........ 7

        2.     The Settlement Is the Result of Arm's-Length Negotiations............................... 9

        3.     The Relief the Settlement Provides Is Adequate, Given the Risk, Expense, Complexity, And Likely Duration of Further Litigation ................................... 10

        4.     The Proposed Method for Distribution Relief Is Effective ................................ 12

        5.     The Proposed Award of Attorneys' Fees Is Appropriate ................................... 13

        6.     Other Agreements ................................................................................................ 16

        7.     Settlement Class Members Are Treated Equally ................................................ 16

    B.     The Remaining Ninth Circuit Factors Support Final Approval .................................. 17

        1.     The Amount the Settlement Obtained Supports Final Approval........................ 17

        2.     Extensive Discovery and Mediation Efforts Highlight the Settlement's Informed Nature................................................................................................. 19

        3.     Experienced Class Counsel's Views Reinforces the Settlement's Reasonableness ................................................................................................... 20

        4.     No Government Participant ................................................................................. 20

        5.     The Favorable Reaction Of The Settlement Class Supports Final Approval .... 21

VII.   CONCLUSION .......................................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>**Cases**</u>                                                                                  <u>**Page No.**</u>

3

4      *Adoma v. Univ. of Phoenix, Inc.*,
        913 F. Supp. 2d 964 (E.D. Cal. 2012)...................................................................... 6

5      *Barbosa v. Cargill Meat Solutions Corp.*,
        297 F.R.D. 431 (E.D. Cal. 2013)............................................................................. 14

6

7      *Briseño v. Henderson*,
        998 F.3d 1014 (9th Cir. 2021).........................................................................13, 14, 15

8      *Carr v. Tadin, Inc.*,
        No. 12-CV-3040 JLS JMA,

9       2014 WL 7497152 (S.D. Cal. Apr. 18, 2014) ........................................................ 18

10     *Carter v. Anderson Merch., LP*,
        No. EDCV 08-0025-VAP (OPx),

11      2010 WL 1946784 (C.D. Cal. May 11, 2010) ........................................................ 20

12     *Churchill Vill., L.L.C. v. Gen. Elec.*,
        361 F.3d 566 (9th Cir. 2004)................................................................................... 21

13

14     *Dei Rossi v. Whirlpool Corp.*,
        No. 02–ML–1475 DT,

15      2016 WL 3519306 (E.D. Cal. June 28, 2016) .......................................................... 6

16     *Ferrington v. McAfee, Inc.*,
        No. 10-CV-01455-LHK,

17      2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) .......................................................... 22

18     *Fleming v. Impax Lab'ys Inc.*,
        No. 16-cv-06557-HSG,

19      2022 WL 2789496 (N.D. Cal. July 15, 2022) .......................................................... 5

20     *Garcia v. Harkins Admin. Servs.*,
        No. 518CV02314MCSJEM,

21      2021 WL 2792321 (C.D. Cal. Jan. 4, 2021)............................................................. 7

22     *Grady v. RCM Techs, Inc.*,
        No. 5:22-cv-00842 JLS-SHK,

23      2025 U.S. Dist. LEXIS 63454 (C.D. Cal. Apr. 1, 2025) ........................................ 22

24     *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998)..................................................................7, 10, 17, 21

25     *Harris v. Marhoefer*,
        24 F.3d 16 (9th Cir. 1994) ...................................................................................... 15

26

27     *Harris v. Vector Mktg. Corp.*,
        2012 WL 381202 (N.D. Cal. Feb. 6, 2012).............................................................. 6

28     *Hefler v. Pekoc*,
        802 F. App'x 285 (9th Cir. 2020) ............................................................................. 7

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................................................... 7

*Hezi, et al. v. Celsius Holdings, Inc.*,
   No. 1:21-cv-09892-JHR,
   2023 WL 2786820 (S.D.N.Y Apr. 5, 2023) ............................................................. 8

*In re Bluetooth Headset Products Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .......................................................................... 10, 19

*In re Ferrero Litig.*,
   No. 11-CV-00205-H-KSC,
   2012 WL 2802051 (S.D. Cal. July 9, 2012)
   *aff'd*, 583 F. App'x 665 (9th Cir. 2014) ............................................................... 18

*In re Heritage Bond Litig.*,
   No. 02–ML–1475 DT,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................ 11, 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................... 19

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 6

*In re Pacific Enterprises Securities Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................... 14, 19

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW,
   2007 WL 4171201 (N.D. Cal. 2007) .................................................................... 14

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .............................................................................. 6

*In re Wireless Facilities*,
   253 F.R.D. 607 (S.D. Cal. Sept. 3, 2008) ............................................................ 19

*Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMx),
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..................................................... 6, 8

*Johnson v. Triple Leaf Tea Inc.*,
   No. 3:14-cv-01570-MMC,
   2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ...................................................... 18

*Kandel, et al. v. Dr. Dennis Gross Skincare, LLC*,
   No. 1:23-cv-01967-ER (S.D.N.Y. October 31, 2024) ............................................. 8

*Kaupelis v. Harbor Freight Tools*,
   No. SACV 19-1203 JVS (DFMx),
   2021 WL 4816833 (C.D. Cal. Aug. 11, 2021) ...................................................... 15

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Kendall v. Odonate Therapeutics, Inc.*,
    No. 3:20-cv-01828-H-LL,
    2022 WL 1997530 (S.D. Cal. June 6, 2022) ................................................................ 21

*Khoja v. Orexigen Therapeutics, Inc.*,
    No. 15-cv-00540-JLS-AGS,
    2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ................................................................ 6

*Kline v. Dymatize Enters., LLC*,
    No. 15-CV-2348-AJB-RBB,
    2016 WL 6026330 (S.D. Cal. Oct. 13, 2016) ........................................................... 12, 19

*Knight v. Red Door Salons, Inc.y*,
    No. 08-01520 SC,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................................................. 20

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ..................................................................................... 7

*Lilly v. Jamba Juice Co.*,
    No. 13-cv-02998-JST,
    2015 WL 2062858 (N.D. Cal. May 4, 2015) ................................................................ 11

*Lopez v. Util. Tree Serv., Ltd. Liab. Co.*,
    No. 3:22-cv-01404-JES-DDL,
    2024 WL 2445689 (S.D. Cal. May 22, 2024) ................................................................. 8

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 2:12-CV-05125 MRP (MANx),
    2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ................................................................ 21

*Marshal v. Monster Energy Co.*,
    No. CV-14-06311-MWF-PLA,
    2016 WL 11758806 (C.D. Cal. Feb. 29, 2016) ............................................................. 22

*Mathein v. Pier 1 Imps. (U.S.), Inc.*,
    No. 1:16-cv-00087,
    2018 WL 1993727 (E.D. Cal. 2018) .......................................................................... 20

*Mild v. PPG Indus., Inc.*,
    No. 2:18-cv-04231-RGK-JEM,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) ................................................................ 7

*Nado v. John Muir Health*,
    No. 24-cv-01632-AMO,
    2025 WL 1725001 (N.D. Cal. June 20, 2025) ............................................................. 16

*Nat'l Rural Telecomms. Coop. v. DIREC-TV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 12, 21

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .................................................................................. 17

*Oula Zakaria v. Gerber Prods. Co.*,
    No. LA CV15-00200 JAK (Ex),
    2017 WL 9512587 (C.D. Cal. Aug. 9, 2017)
    *aff'd* 2018 WL 5977897 (9th Cir. Nov. 14, 2018) ........................................................ 11

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

*Prescott v. Bayer Healthcare LLC*,
  No. 20-cv-00102-NC,
  2020 WL 4430958 (N.D. Cal. Dec. 15, 2021) ........................................................ 8

*Roberti v. OSI Sys., Inc.*,
  No. CV-13-09174 MWF (MRW),
  2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) .......................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................... 9, 17

*Schiller v. David's Bridal, Inc.*,
  No. 1:10-cv-00616-AWI-SKO,
  2012 WL 2117001 (E.D. Cal. June 11, 2012) ....................................................... 14

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) ................................................................. 22

*Singer v. Becton Dickinson and Co.*,
  No. 08-CV-821 - IEG (BLM),
  2010 WL 2196104 (S.D. Cal. June 1, 2010) ........................................................ 14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..................................................................... 14

*Swetz v. GSK Consumer Health, Inc.*,
  No. 5:20-cv-04731 (S.D.N.Y. November 22, 2021) ................................................... 8

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ........................................................................ 7

*Vinh Nguyen v. Radient Pharms. Corp..*,
  No. SACV 11-00406 DOC(MLGx),
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ......................................................... 16

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) .................................................................. 14

*Weigele v. Fedex Ground Package Sys.*,
  267 F.R.D. 614 (S.D. Cal. Apr. 5, 2010) .......................................................... 11

*Westfall v. Ball Metal Bev. Container Corp.*,
  No. 2:16-02632-KJM-CKD,
  2021 WL 4206851 (E.D. Cal. Sept. 16, 2021) ...................................................... 13

*White v. Experian Info. Sols., Inc.*,
  No. SACV05-1070 DOC (MLGx),
  2009 WL 10670553 (C.D. Cal. May 7, 2009) ....................................................... 19

*Wong v. Arlo Techs., Inc.*,
  No. 5:19-cv-00372-BLF,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ...................................................... 10

**Federal Statutes**

Fed. R. Civ. P. 23 ............................................................................. *passim*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Anthony Bush ("Plaintiff"), on behalf of himself and the certified Settlement Class, respectfully moves for final approval of the proposed class action settlement with Rust-Oleum Corporation ("Defendant"). After more than five years of contested litigation—including extensive discovery, expert analysis, motion practice, and class-certification proceedings—the Settlement delivers substantial, targeted relief: Defendant will remove the "Non-Toxic" claim from Krud Kutter labels and qualify the "Earth Friendly" claim with clarifying language, and create a non-reversionary $1.5 million fund for direct cash payments to consumers. Any remaining funds will be distributed *cy pres* to Earthjustice, a nonprofit environmental law organization dedicated to protecting public health and the environment, and Mamavation, a consumer advocacy group focused on environmental health and toxic-free living, ensuring the funds benefit consumers and the public. This Court granted preliminary approval of the Settlement, finding it fair, reasonable, and adequate under Rule 23(e).

The Settlement received an overwhelmingly positive response. The Court-approved digital notice program yielded 13.65 million targeted impressions, resulting in 23,742 valid claims, independently verified by ClaimScore, covering 165,950 units of products. Claimants will receive approximately $2 per unit, representing a 30% refund of the average purchase price, with an average payout of $13.90—a meaningful recovery for a low-cost consumer product. Likewise, the claims rate of approximately 7.5%, calculated based on estimated household purchases during the Class Period, is strong for a nationwide consumer product settlement. Notably, no Class Members opted out or objected, providing powerful evidence of the Settlement's fairness and strong support for final approval.

Given the substantial and certain relief secured, the informed, arm's-length resolution reached after more than five years of hard-fought litigation, the robust Court-approved notice program, and the uniformly positive class reaction, the Settlement is fair, reasonable, and adequate, and should be finally approved.

## II.    PROCEDURAL OVERVIEW

Plaintiff filed this class action on May 13, 2020, challenging Defendant's deceptive labeling of its Krud Kutter cleaning products as "Non-Toxic" and "Earth Friendly." *See generally* ECF No. 26. Plaintiff asserted claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"), as well as claims for breach of express warranty and unjust enrichment. *Id.* ¶¶ 66-161.

Over the course of more than five years, the parties engaged in rigorous litigation. Defendant's motions to dismiss, transfer, exclude experts, and for summary judgment were all denied. ECF Nos. 40, 51, 186, 190. The Court certified a California damages and injunctive relief class under Rules 23(b)(2) and (b)(3), and the Ninth Circuit denied Defendant's Rule 23(f) petition. *See* ECF Nos. 189, 204. The parties also undertook extensive fact and expert discovery, produced and analyzed thousands of pages of documents, deposed fact and expert witnesses, and prepared competing expert reports. Declaration of Bahar Sodaify ("Sodaify Decl.") ¶¶ 15-16. After a mediation session and arms-length negotiations overseen by experienced mediator Hunter Hughes, Esq., the parties reached a nationwide settlement. *See id.* ¶ 19.

The Settlement provides for both forward-looking injunctive relief and backward-looking monetary compensation. Defendant agreed to remove the "Non-Toxic" representation from the Krud Kutter product labels and to qualify the "Earth Friendly" claim, and to establish a $1.5 million non-reversionary fund to pay claims from the nationwide Settlement Class. *See* Sodaify Decl., Exhibit A (Settlement Agreement) §§ 2.1, 5.1.

On April 17, 2025, this Court granted preliminary approval of the Settlement, finding it fair, reasonable, and adequate under Rule 23(e). ECF No. 227. The Court conditionally certified a nationwide Settlement Class of all U.S. purchasers of the covered Krud Kutter products from May 13, 2016 through the date of preliminary approval (April 17, 2025), approved the notice plan, appointed Clarkson Law Firm, P.C. and Moon Law as Class Counsel, and Anthony Bush, as Class Representative, and appointed Digital Settlement, LLC as Settlement Administrator. *Id.* On June 9, 2025, Plaintiff filed his Motion for Award of Attorneys' Fees, Costs, and Service Award. ECF No. 229.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

The reaction of the Class has been very positive. A total of 23,742 valid claims were submitted, resulting in an average payment of $13.90 per claimant and a 7.5% claim rate, which is exceptionally strong for a nationwide consumer product settlement. Sodaify Decl. ¶ 10; *see* Declaration of Mark Schey ("Schey Decl.") ¶ 4. No Class Members opted out or objected, demonstrating widespread approval and support. Sodaify Decl. ¶ 10; Schey Decl. ¶ 28. Each claimant will receive a refund equal to approximately 30% of the product's average purchase price, which is more than three times the per-class-member recovery that Plaintiff could have reasonably achieved at trial, particularly when factoring in the risks, costs, and delays of continued litigation. Sodaify Decl. ¶ 10. Given these results and the strong support of the Class, the Settlement warrants final approval.

## III.    SUMMARY OF SETTLEMENT TERMS

Defendant has agreed to permanently remove the "Non-Toxic" representation from all Krud Kutter product labels and marketing, and to qualify the "Earth Friendly" claim with clarifying language on the back label. Sodaify Decl., Ex. A § 5.1. Defendant may sell through existing inventory but must ensure all future products comply with these changes. *Id.* § 5.1.1. Defendant has also established a $1.5 million non-reversionary common fund to pay: (1) notice and administration costs; (2) any Court-approved attorneys' fees and costs; (3) any Court-approved service award; and (4) cash benefits to Class Members. *Id.* § 2.1.

Class Members submitting valid claims with proof of purchase receive $1.00 per unit purchased without limitation. *Id.* § 4.1.3. Those without proof may claim up to eight units per household. *Id.* Payments are subject to pro rata adjustment, capped at $2.00 per unit, depending on the number of claims submitted. *Id.* § 4.1.5. Any residual funds will be distributed *cy pres* in equal shares to Earthjustice and Mamavation. *Id.* § 4.2. Upon final approval and full funding of the Settlement, Class Members who did not opt out will release all claims related to the advertising, labeling, and marketing of the Covered Products, subject to the exclusions set forth in the Settlement Agreement. *Id.* § 8.1.

Under the Settlement, Plaintiff seeks a service award of up to $5,000 in recognition of his efforts and contributions as Class Representative. *See* ECF No. 229. Separately, Class Counsel has

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  requested an award of $500,000 in attorneys' fees and $284,640.97 in reimbursable litigation

2  expenses. *Id.*

3  **IV.  SUCCESSFUL COMPLETION OF THE COURT-APPROVED NOTICE PLAN**

4      In its Preliminary Approval Order, the Court appointed Digital Settlement, LLC as the

5  Settlement Administrator and approved the proposed Notice Plan. ECF No. 227. The Court found

6  that the plan "constitutes the best notice practicable under the circumstances and constitutes due and

7  sufficient notice to the Settlement Class of the terms of the Settlement Agreement and the Final

8  Approval Hearing and complies fully with the requirements of the Federal Rules of Civil Procedure,

9  the United States Constitution, and any other applicable law." ECF No. 227 at 4-5.

10      Digital Settlement has executed the comprehensive, Court-approved Notice Plan. The Plan

11  used multiple channels—targeted display/search advertising, a nationwide press release, a dedicated

12  Settlement Website with online claim filing, and a toll-free IVR—selected to reach likely purchasers

13  of the products and to direct them to relevant case and settlement information. *See* Schey Decl. ¶ 4.

14  The Internet campaign ran for 30 days across comScore Tier-1 properties and major search

15  platforms and delivered millions of verified impressions that funneled Class Members to the

16  Settlement Website. *Id.* ¶¶ 12-16. The site hosted the Long and Short Form Notices, Claim Form,

17  Settlement Agreement, court orders, deadlines, FAQs, and contact information, and it logged over

18  2.8 million visits. *Id*.

19      To broaden reach, Digital Settlement issued a nationwide press release via PR Newswire and

20  distributed to 893 outlets (including Associated Press distribution), with an estimated potential

21  audience of 87 million and 505 media pickups from outlets such as AP News, Benzinga,

22  Morningstar, Seeking Alpha, and Webull—each directing readers to the Settlement Website and the

23  IVR. *Id.* ¶¶ 17-21. Digital Settlement also implemented the toll-free IVR, which provided recorded

24  settlement information; it received 46 inbound calls totaling 92.93 minutes, with 10 messages for

25  assistance. *Id.* ¶¶ 7, 41. Digital Settlement also provided CAFA notice to federal and state officials

26  and maintained email and mail support. *Id.* ¶ 10.

27      The notice plan also incorporated robust fraud-prevention. Digital Settlement integrated

28  ClaimScore for real-time vetting, supplemented by additional screening and website security/uptime

monitoring. *Id.* ¶¶ 29-34; *see generally,* Declaration of Bryan Heller of ClaimScore ("Heller Decl."). After review, 23,742 claims were approved, representing 165,950 covered units—ensuring that settlement benefits flow to legitimate claimants. Schey Decl. ¶ 33. Digital Settlement also offered a narrowly tailored QuickPay option to a subset of approved claimants to enhance efficiency without prejudicing pro-rata distribution; 930 Class Members elected QuickPay. *Id.* ¶¶ 35-38.

In sum, the best notice practicable was affected: it demonstrated exceptional reach and engagement, incorporated anti-fraud safeguards proportionate to the risk, and complied with Rule 23 and due process.

## V.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Court has already certified, for settlement purposes, a nationwide Settlement Class. ECF No. 227 ¶ 4. That Class comprises all persons in the United States who purchased one or more Covered Products between May 13, 2016 and April 17, 2025, excluding Defendant's officers, directors, and employees, their immediate family members, and any presiding judge. Sodaify Decl., Ex. A§ 1.9; ECF No. 227 ¶ 4. This settlement certification builds on the Court's earlier order certifying a California class. ECF No. 189. As explained in Plaintiff's motion for preliminary approval, nationwide settlement certification ensures uniform, comprehensive relief for all consumers affected by the "Non-Toxic" and "Earth Friendly" labeling, while preserving each class member's right to opt out. *See* ECF No. 223 at 9-15.

The Rule 23(a) prerequisites remain satisfied: numerosity (tens of thousands of class member claimants), commonality (uniform label statements and common questions about their truth and materiality), typicality (Plaintiff's claims arise from the same course of conduct and legal theories), and adequacy (no conflicts; experienced counsel). Fed. R. Civ. P. 23(a); *see* ECF No. 223 at 13. Rule 23(b)(3) is likewise met because common questions predominate over any individualized issues and a class action is superior to thousands of individual suits. *See* ECF No. 223 at 13-15.

Furthermore, courts in this Circuit have repeatedly held that once a class has already been certified—whether at the merits stage or at preliminary approval—the Court need not revisit the Rule 23 analysis at final approval. *See Fleming v. Impax Labs. Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022) (incorporating preliminary certification analysis where

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

no facts had changed); *Khoja v. Orexigen Therapeutics, Inc*., No. 15-cv-00540-JLS-AGS, 2021 WL 5632673, at *3 (S.D. Cal. Nov. 30, 2021) (same). Instead, the focus properly shifts to whether the settlement is "fair, reasonable, and adequate." *See Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); *Harris v. Vector Mktg. Corp*., No. C-08-5198 EMC, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012) (once a class is certified, the court may "focus instead on whether the proposed settlement is fair, adequate, and reasonable"); *Dei Rossi v. Whirlpool Corp*., No. 02–ML–1475 DT, 2016 WL 3519306, at *3 (E.D. Cal. June 28, 2016) (same).

Accordingly, for the reasons set forth in Plaintiff's preliminary approval papers and in the Court's Preliminary Approval Order, the Court should grant final certification of the Settlement Class.

## VI.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). Under Rule 23(e)(2), court approval is warranted if a settlement is "fair, reasonable, and adequate" taking into consideration whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

These factors do not "displace any factor [courts apply], but rather [focus] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 WL 5173771, at *4 (C.D. Cal. Oct. 10, 2019) (cleaned up). "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Not every factor needs to be satisfied, instead, "[u]nder some circumstances, the presence of a single factor may provide sufficient grounds for court approval." *Garcia v. Harkins Admin. Servs.*, No. 518CV02314MCSJEM, 2021 WL 2792321, at *2 (C.D. Cal. Jan. 4, 2021) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)). Here, Rule 23(e) and the Ninth Circuit factors weigh in favor of final approval.

### A.    Rule 23(e) Factors Are Satisfied in Favor of Final Approval

#### 1.    *Plaintiff and Class Counsel Adequately Represented the Settlement Class*

A court must consider whether the "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). In making this determination, courts ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Plaintiff and Class Counsel satisfy both requirements and have adequately represented the Settlement Class.

Plaintiff interests align with the other Class Members. His claims are typical of the Class because, like other consumers nationwide, he purchased Krud Kutter products labeled as "Non-Toxic" and "Earth Friendly" and alleges that he was deceived by those representations. *See* ECF No. 26 ¶¶ 10-11, 66-161; *see Mild v. PPG Indus., Inc.*, No. 2:18-cv-04231-RGK-JEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is

aligned with the interests of the rest of the Settlement Class members."); *Jiangchen*, 2019 WL 5173771, at *5 ("The claims of Lead Plaintiff and the other Settlement Class Members arise from the same alleged conduct: the purchase of [company] stock at inflated prices based on Defendants' alleged material misstatements.").

Throughout this litigation, Plaintiff has actively participated in discovery, responded to document requests, sat for deposition, and worked closely with Class Counsel to achieve the best outcome for the Class. ECF No. 229-1 ¶ 4. His willingness to serve as Class Representative for over five years, despite the burdens of discovery and the uncertainties of litigation, demonstrates his adequacy and commitment to the class and the cause. *Id.* ¶¶ 5, 10.

Plaintiff also retained highly experienced counsel with a strong track record of prosecuting consumer protection and false advertising class actions. Clarkson Law Firm and Moon Law APC have successfully litigated numerous cases involving deceptive labeling under California's consumer protection laws. *See* Sodaify Decl., ¶ 55, Exhibit B (Clarkson Law Firm resume); Declaration of Chris Moon ("Moon Decl."), Exhibit 1 (Moon Law resume). Courts, including those in this District, have recognized Class Counsel's extensive experience in complex consumer litigation and have found them adequate to represent class members. *Id.*; *see Kandel, et al. v. Dr. Dennis Gross Skincare, LLC*, Case No. 1:23-cv-01967-ER (S.D.N.Y. October 31, 2024) (false labeling and advertising of products as containing collagen; Clarkson Law Firm appointed Class Counsel and final approval of $9.2 million nationwide settlement granted by Hon. Edgardo Ramos); *Swetz v. GSK Consumer Health, Inc.*, No. 5:20-cv-04731 (S.D.N.Y. November 22, 2021) (false labeling of products as "100% Natural" and "Clinically proven to curb cravings"; Clarkson Law firm appointed Class Counsel and final approval of $6.5 million nationwide class granted by Hon. Nelson S. Roman); *Prescott v. Bayer Healthcare LLC*, No. 20-cv-00102-NC, 2020 WL 4430958 (N.D. Cal. Dec. 15, 2021) (granting final approval of class action settlement and appointing Clarkson Law Firm, P.C. and Moon Law APC as Class Counsel); *Hezi v. Celsius Holdings, Inc.*, No. 1:21-cv-09892-JHR, 2023 WL 2786820, at *2 (S.D.N.Y. Apr. 5, 2023) (finding that "Clarkson Law Firm, P.C. has fairly and adequately protected the interests of the Settlement Class and are qualified to represent the Settlement Class and are, therefore, appointed as Class Counsel"); *Lopez*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*v. Util. Tree Serv., Ltd. Liab. Co.*, No. 3:22-cv-01404-JES-DDL, 2024 WL 2445689, at *3 (S.D. Cal. May 22, 2024) (appointing Moon Law APC as class counsel and finally approving class action settlement).

Class Counsel is equally adequate to represent the Settlement Class here. Their track record in this case demonstrates vigorous and effective advocacy at every stage of the litigation, including: (i) defeating Defendant's motions to dismiss, transfer, exclude experts, and for summary judgment; (ii) securing class certification under both Rule 23(b)(2) and Rule 23(b)(3); (iii) successfully opposing Defendant's petition for interlocutory review in the Ninth Circuit; (iv) conducting extensive fact and expert discovery; and (v) negotiating a nationwide Settlement after arms-length mediation with an experienced neutral. Sodaify Decl. ¶¶ 13-19.

This record reflects not only zealous prosecution but also skill and persistence in achieving meaningful relief for the Class despite Defendant's repeated challenges. Plaintiff and Class Counsel have thus more than adequately represented the Settlement Class and plainly satisfy Rule 23(e)(2)(A).

### 2.   *The Settlement Is the Result of Arm's-Length Negotiations*

Rule 23(e)(2)(B) requires the Court to consider whether "the [proposed settlement] was negotiated at arm's length." Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The participation of a respected mediator further supports the conclusion that a settlement was achieved through serious, non-collusive bargaining. *See Roberti v. OSI Sys., Inc.*, No. CV-13-09174 MWF (MRW), 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) ("[A]ssistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The parties reached resolution only after a mediation with experienced mediator Hunter Hughes, Esq., followed by months of continued settlement discussions facilitated by him. Sodaify Decl. ¶ 19; ECF No. 229-3 ¶¶ 9, 25. Mr. Hughes is a recognized mediator with extensive experience resolving complex class actions, including consumer labeling and false advertising cases. Sodaify Decl. ¶ 19. His oversight ensured that the negotiations were conducted at arm's length, on an informed basis, and without collusion. *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

The Settlement was ultimately reached after the exchange of extensive discovery, expert reports, and motion practice, which provided both sides with a thorough understanding of the strengths and risks of the claims. *Id.* ¶ 20. The parties' acceptance of the mediator's proposal after extended, adversarial negotiations demonstrates both the non-collusive nature of the process and the fairness of the compromise. *Id.* ¶ 19. As the Ninth Circuit has noted, the use of an experienced neutral supports a finding that a settlement was not the product of collusion. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). This factor therefore weighs strongly in favor of final approval of the Settlement.

### 3.    *The Relief the Settlement Provides Is Adequate, Given the Risk, Expense, Complexity, And Likely Duration of Further Litigation*

Rule 23(e)(2)(C)(i) requires the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." This requirement incorporates three of the traditional *Hanlon* factors, including the strength of Plaintiff's case; the risk, expense, and complexity of further litigation; and the risk of maintaining class certification through trial. *Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021) (citing *Hanlon*, 150 F.3d at 1026). Each factor supports final approval.

Although Plaintiff remains confident in the strength of his claims, proceeding with this case carried significant risks. Defendant vigorously contested liability by arguing that disclaimers on the Krud Kutter labels and testimony from Plaintiff and his toxicology expert defeated the reasonable consumer theory. Sodaify Decl. ¶ 21; *see* ECF No. 116 at 12 (arguing that Plaintiff's theory was contradicted by qualifying language directly below the "Non-Toxic" term and that the Products "are accurately defined to address Bush's expert's only reason for calling such products toxic"). Defendant also raised defenses that "Earth Friendly" was mere puffery and that consumers were not actually misled. *See* ECF No. 29 (motion to dismiss); ECF No. 116 at 14 (arguing that "[t]he term 'Earth Friendly' 'implies a comparison, as opposed to a promise to have no negative impact on the ecosystem,' and thus constitute nonactionable 'puffery' as interpreted by courts.") (internal citations omitted). Ultimately, whether reasonable consumers were likely to be deceived by the challenged representations would hinge on competing survey and expert testimony and require a factual

determination on which a jury could disagree. *See Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 2062858, at *3 (N.D. Cal. May 4, 2015) (finding liability turning on consumer reasonableness introduces risk).

Moreover, even though the Court certified a California Rule 23(b)(2) and (b)(3) class (ECF No. 189), the risk of decertification, of the Court or a jury disagreeing on materiality, or that, after resolution, the Action would be appealed are significant considerations favoring resolution now. *See* Fed. R. Civ. P. 23(c)(1) (certification orders may be altered or amended before final judgment); *Oula Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2017 WL 9512587, at *22 (C.D. Cal. Aug. 9, 2017) (decertifying class after finding plaintiff failed to provide an adequate basis to calculate restitution and actual damages), *aff'd* 2018 WL 5977897 (9th Cir. Nov. 14, 2018); *Weigele v. Fedex Ground Package Sys.*, 267 F.R.D. 614, 625 (S.D. Cal. Apr. 5, 2010) (decertifying class after concluding predominance was lacking).

Continued litigation would have also required additional expert reports, *Daubert* motions, and trial preparation. The parties had already exchanged competing survey evidence and retained experts. Sodaify Decl. ¶¶ 22, 23; *see* ECF No. 190 (denying motions to exclude expert surveys). At trial, jurors would have been asked to weigh conflicting expert testimony on toxicology, consumer perception, and labeling regulations. Preparing and presenting such evidence would have been expensive and time-consuming. And even if Plaintiff succeeded at trial, Defendant would likely pursue post-trial motions and appeal, delaying recovery for years. *See In re Heritage Bond Litig.*, No. 02–ML–1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

By contrast, the Settlement provides immediate and substantial relief. Defendant has agreed to remove the "Non-Toxic" claim from all Krud Kutter products and to qualify the "Earth Friendly" claim with clarifying language. Sodaify Decl., Ex. A § 5.1. Defendant has also established a $1.5 million non-reversionary fund to compensate consumers nationwide, with payments of $1.00 per unit (unlimited with proof of purchase, up to eight units without), subject to pro rata adjustment up to $2.00 per unit. *Id.* §§ 2.1, 4.1. Any remaining funds will be distributed *cy pres* to Earthjustice, a

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1  nonprofit environmental law organization dedicated to protecting public health and the

2  environment, and Mamavation, a consumer advocacy group focused on environmental health and

3  toxic-free living. *Id.* § 4.2.

4      The expense, complexity, duration, and risk involved in further litigation strongly favor

5  resolution through the Settlement. *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIREC-TV, Inc.*, 221

6  F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare

7  the significance of immediate recovery by way of the compromise to the mere possibility of relief

8  in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to

9  take the bird in hand instead of a prospective flock in the bush.'") (citations omitted); *Kline v.*

10 *Dymatize Enters., LLC*, No. 15-CV-2348-AJB-RBB, 2016 WL 6026330, at *5 (S.D. Cal. Oct. 13,

11 2016) ("[W]hile confident in the merits of their case, Plaintiffs are cognizant of the inherent risks

12 of lengthy litigation . . . The proposed settlement adequately accounts for these risks.").

13     The Settlement ensures that deceptive labeling practices are discontinued and provides

14 guaranteed monetary recovery to consumers nationwide, relief that could not be assured through

15 continued litigation. The balance of risks and benefits strongly supports a finding that the Settlement

16 relief is fair, reasonable, and adequate under Rule 23(e)(2)(C).

17         **4.    *The Proposed Method for Distribution Relief Is Effective***

18     Rule 23(e)(2)(C)(ii) asks whether the method of distributing relief—including claims

19 processing—is effective. Here, the Settlement's distribution plan is straightforward and efficient.

20     Class Members could submit a simple Claim Form online via the Settlement Website or by

21 mail to the Settlement Administrator (Digital Settlement), which also provided a toll-free IVR line,

22 a dedicated email, and a P.O. box—ensuring multiple, accessible filing channels. Schey Decl. ¶ 4.

23 Claimants may submit unlimited units with proof or up to eight units per household without proof,

24 as set forth in the Settlement Agreement. *See* Sodaify Decl., Ex. A§§ 4.1.1–4.1.3.

25     To protect the fund and ensure only valid claims are paid, Digital Settlement integrated

26 ClaimScore into the online process for real-time fraud screening using AI/ML, with continuous

27 dashboard oversight. Schey Decl. ¶¶ 29-34; Heller Decl. ¶¶ 2-5, 44-50. Claims scoring above 700

28 were treated as presumptively valid, while lower-scoring submissions were denied or subjected to

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

further review. *Id*. After screening, 23,742 claims were approved, covering 165,950 units—demonstrating both robust access and effective fraud control. *Id*.

The Administrator also offered an optional "QuickPay" feature (implemented with ClaimScore and Digital Disbursement) that allowed eligible, approved claimants to elect an immediate $6.00 payment without affecting other claimants' pro-rata recoveries; 930 Class Members used QuickPay. Schey Decl. ¶¶ 35-38.

Approved payments will be made through modern, convenient options—paper check, ACH, PayPal, Venmo, e-Mastercard, or Zelle—to maximize redemption and minimize friction. Distribution timing is governed by the Settlement Agreement (30 days after the Effective Date, absent Court direction). *Id*. ¶ 45; Sodaify Decl., Ex. A § 4.6. To ensure the entire fund benefits the Class, payments are subject to a single pro-rata adjustment (capped at $2.00 per product). Sodaify Decl., Ex. A§ 4.1.5.

The channels supporting claims and distribution were actually used: the Settlement Website received over 2.8 million visits; the toll-free IVR handled 46 calls (92.93 minutes) with 10 voicemail requests; and the settlement email account fielded 109 inbound emails (with 82 responses). Schey Decl. ¶ 41. These metrics confirm that Class Members could access information and obtain relief efficiently.

Given the simple, multi-channel filing options, real-time fraud safeguards, flexible digital disbursements, and demonstrated Class engagement, the distribution method is effective and equitable, and supports final approval under Rule 23(e)(2)(C)(ii).

### 5. *The Proposed Award of Attorneys' Fees Is Appropriate*

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." In this context, the Ninth Circuit instructs courts to be alert for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations," regardless of whether settlement was reached pre- or post-certification. *Westfall v. Ball Metal Bev. Container Corp.*, No. 2:16-02632-KJM-CKD, 2021 WL 4206851, at *4 (E.D. Cal. Sept. 16, 2021) (citing *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)). The purpose of scrutinizing the fee arrangement is to look for "potential collusion or unfairness to the

1   class." *Briseño*, 998 F.3d at 1026. Courts consider three red flags: (1) whether counsel "receive[d]

2   a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing

3   arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *Id.* at 1026-

4   27. None of the hallmarks of collusion are present here.

5       First, as detailed in Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Service

6   Award (ECF 229), Class Counsel's request for attorneys' fees of $500,000 (approximately one-third

7   of the $1.5 million Settlement Fund) is within the range deemed reasonable by courts in this Circuit.

8   *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (finding and

9   approving a fee request of 33% as reasonable); *Singer v. Becton Dickinson and Co.*, No. 08-CV-

10  821 - IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving 33.33% fee where

11  parties engaged in "in extensive informal and formal discovery, investigation, and pre-trial motion

12  practice concerning the facts and the law"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482,

13  491–92 (E.D. Cal. 2010) (same); *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 379 (9th

14  Cir. 1995) (affirming 33% fee). The requested fee is proportionate to the results obtained and

15  justified by the risks Class Counsel assumed in litigating on a wholly contingent basis for more than

16  five years, plus the years of contested motion practice and discovery, and the excellent results

17  obtained for a nationwide Class. Class Counsel is also not seeking a positive multiplier, but rather

18  a negative multiplier of 0.31, as the requested fee represents a significant reduction from the actual

19  lodestar incurred. *See* ECF No. 229. This strongly supports the conclusion that the requested fee is

20  fair and reasonable. *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL

21  4171201, at *16 (N.D. Cal. 2007) ("The resulting so-called negative multiplier suggests that the

22  percentage-based amount is reasonable and fair based on the time and effort expended by class

23  counsel."); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at

24  *23 (E.D. Cal. June 11, 2012) ("An implied negative multiplier supports the reasonableness of the

25  percentage fee request.").

26      In addition to fees, Class Counsel requests reimbursement of $284,640.78 in litigation

27  expenses, which were necessarily incurred in the prosecution of this complex case and are

28  reasonable. *See* ECF 229; Sodaify Decl. ¶ 33; *Staton v. Boeing Co.*, 327 F.3d 938, 974-75 (9th Cir.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

2003). Class Counsel is entitled to recover standard out-of-pocket expenses that an attorney would customarily bill to a fee-paying client. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). The expenses incurred here were both reasonable and necessary to secure the favorable outcome achieved in this case.

Together, the fee and cost requests are appropriate, consistent with similar cases, and fully supported by the record. These amounts will be paid from the non-reversionary Settlement Fund, subject to Court approval, without reducing injunctive relief or imposing additional liability on Defendant. Sodaify Decl., Ex. A §§ 2.1, 3.1–3.2. Any fee and cost award will be paid within fourteen days of entry of judgment, notwithstanding any appeal or other proceedings delaying the Effective Date. *Id*. § 3.2.

Second, there is no "clear sailing" provision in which Defendant agreed not to oppose Class Counsel's fee request; Defendant expressly reserved the right to object. ECF No. 229-4 § 3.1 ("The Parties have not agreed on the amount of any attorneys' fees, costs or expenses, and Defendant reserves the right to oppose or object to such amounts."); *see also Briseño*, 998 F.3d at 1026-27 (noting that clear sailing provisions raise concerns of excessive fees traded for lower class benefits).

Third, the Settlement contains no "kicker" or "reverter" clause; if the Court awards less than the requested amount, the difference will remain in the Settlement Fund for distribution to Class Members, not revert to Defendant. Sodaify Decl., Ex. A § 3.2 ("[I]f for any reason the Settlement, Plaintiff's attorneys' fees or litigation costs are overturned, reduced, vacated, or otherwise modified, Class Counsel shall be obligated by Court order to return any difference between the amount of the original award and any reduced award. If the Settlement remains in force, the difference shall be returned to the Settlement Fund; if the Settlement is not in force, the difference shall be returned to Defendant."); *see also Kaupelis v. Harbor Freight Tools*, No. SACV 19-1203 JVS (DFMx), 2021 WL 4816833, at *10 (C.D. Cal. Aug. 11, 2021) (collusion arises when an agreement contains a "kicker" or "reverter" clause that "returns unawarded fees to the defendant, rather than the class").

Accordingly, the terms of the proposed award of attorneys' fees and costs are appropriate and support a finding that the relief provided to the Class is fair, reasonable, and adequate under Rule 23(e)(2)(C)(iii).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

### 6.     Other Agreements

Rule 23(e)(2)(C)(iv) requires the parties to identify any agreement made in connection with the Settlement. Here, the only agreement is the Settlement Agreement itself (ECF No. 223-2), which was submitted to the Court with Plaintiff's motion for preliminary approval. There are no separate side agreements between the parties concerning opt-outs or any other matter that must be disclosed under Rule 23(e)(3). This factor therefore supports final approval of the Settlement.

### 7.     Settlement Class Members Are Treated Equally

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement treats class members equitably relative to one another. This factor is satisfied where all class members are eligible for the same relief, subject only to sensible distinctions based on proof of purchase or other objective criteria. *Nado v. John Muir Health*, No. 24-cv-01632-AMO, 2025 WL 1725001, at *6 (N.D. Cal. June 20, 2025) (finding settlement appropriate where "fund amount will be distributed among class members on a pro rata basis using the same formula to calculate payments for all class members.").

Here, the Settlement provides uniform monetary relief to all Class Members who submit valid claims: $1.00 per Covered Product purchased, with no cap if proof of purchase is provided and up to eight units without proof of purchase per household. Sodaify Decl., Ex. A§ 4.1.3. Payments will be adjusted pro rata to ensure the entire $1.5 million common fund is distributed, subject to a cap of $2.00 per unit. *Id.* § 4.1.5. This framework ensures that every Class Member is compensated fairly in proportion to their purchases and that no funds revert to Defendant. *See Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC(MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (approving pro rata plan that sensibly distinguishes between claimants based on objective criteria).

In addition, the Settlement provides equal non-monetary relief to all Class Members through Defendant's agreement to remove the "Non-Toxic" representation from all Krud Kutter products and to qualify the "Earth Friendly" claim with clarifying language. Sodaify Decl., Ex. A§ 5.1. This forward-looking injunctive relief addresses the alleged deception and benefits all purchasers, regardless of whether they submit a claim for cash payment.

The only distinction is that Plaintiff seeks a modest $5,000 service award, subject to Court approval, in recognition of his five years of service to the Class, including participating in discovery and sitting for deposition. *See* ECF No. 229; Sodaify Decl., Ex. A§ 3.3. Service awards are common in class actions and serve to compensate class representatives for their time, efforts, and risks undertaken in pursuing litigation on behalf of absent class members. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

Accordingly, the Settlement treats all Class Members equitably while recognizing Plaintiff's additional contributions with a modest service award.

**B.     The Remaining Ninth Circuit Factors Support Final Approval**

In *Hanlon*, 150 F.3d 1011, the Ninth Circuit identified additional factors not co-extensive with Rule 23(e)(2): amount offered in settlement; extent of discovery completed and the stage of the proceedings; experience and views of counsel; presence of a governmental participant; and reaction of the class members to the proposed settlement. These remaining factors all weigh in favor of final approval.

### 1.     *The Amount the Settlement Obtained Supports Final Approval*

The reasonableness of a class settlement is not measured against a hypothetical best-case recovery, but instead by whether the compromise is fair, adequate, and free from collusion. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). As the Ninth Circuit explained, "[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Id.* at 624; *see also Hanlon*, 150 F.3d at 1027 ("[T]he question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

The Settlement provides substantial and certain relief. Defendant has agreed to create a $1.5 million non-reversionary common fund; after notice/administration costs, attorneys' fees and expenses, and the modest service award, the Net Settlement Fund is $ 539,483.28 for direct cash payments to Class Members. See Sodaify Decl., Ex. A §§ 2.1, 4.1; see also Schey Decl. ¶ 43. Class Members who submit valid claims receive $1.00 per covered product (unlimited with proof; up to

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    eight units without proof), subject to a single pro rata adjustment up to $2.00 per product. Sodaify

2    Decl., Ex. A §§ 4.1.3–4.1.5. Based on the verified claims data, the estimated pro rata payment is

3    approximately $13.90 per approved claim (range $2.00–$72.00), confirming that the Settlement

4    delivers meaningful monetary relief. Schey Decl. ¶ 44. In addition, Defendant has agreed to

5    injunctive relief by removing the "Non-Toxic" claim from Krud Kutter labels and qualify the "Earth

6    Friendly" claim with clarifying language to ensure consumers are not misled in the future. Sodaify

7    Decl., Ex. A § 5.1.

8         Although Plaintiff believes the damages in this case could be substantial if liability and

9    materiality were established on a class wide basis, the Settlement balances that potential with the

10   very real risks and delays of trial and appeal. Sodaify Decl. ¶ 69. Defendant has consistently denied

11   liability and raised defenses based on disclaimers, survey evidence, and expert testimony. *See* ECF

12   No. 116. Whether reasonable consumers were misled is a question on which a jury could disagree,

13   and even a favorable verdict could be challenged on appeal. *See In re Heritage Bond Litig.*, 2005

14   WL 1594403, at *7 (noting uncertainty of trial outcome even in strong cases).

15        Viewed in this context, the Settlement represents an excellent result. It provides Class

16   Members with immediate monetary recovery, ensures that future purchasers will not be subjected

17   to the challenged labeling, and eliminates the significant risks of no recovery after years of continued

18   litigation. Courts have approved consumer settlements with comparable or lesser relief where

19   litigation risks are high. *See, e.g.*, *In re Ferrero Litig.*, No. 11-CV-00205-H-KSC, 2012 WL

20   2802051, at *4 (S.D. Cal. July 9, 2012), *aff'd*, 583 F. App'x 665 (9th Cir. 2014) (approving

21   settlement where "Defendant agreed to modify the product label to address the fundamental claim

22   raised in Plaintiffs' complaint"); *Carr v. Tadin, Inc.,* No. 12-CV-3040 JLS JMA, 2014 WL 7497152,

23   at *7 (S.D. Cal. Apr. 18, 2014) (approving settlement with no monetary relief where "the injunctive

24   relief offered will provide the Settlement Class with the relief they most desire—a change in product

25   labeling"); *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570-MMC, 2015 WL 8943150, at *5

26   (N.D. Cal. Nov. 16, 2015) (approving settlement that required substantial revisions to labeling).

27        In sum, both the monetary and injunctive relief obtained here strongly support final approval

28   of the Settlement as fair, reasonable, and adequate for the Settlement Class.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

2.       *Extensive Discovery and Mediation Efforts Highlight the Settlement's Informed Nature*

Courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). This Action involved more than five years of hard-fought litigation, during which Plaintiff and Defendant's Rule 30(b)(6) designees were deposed, fact and expert discovery was conducted, thousands of pages of documents were produced and analyzed, and expert reports were exchanged. Sodaify Decl. ¶¶ 14–18. The parties also fully briefed and argued multiple substantive motions, including Defendant's motions to dismiss, to transfer venue, for summary judgment, to exclude expert testimony, and to oppose class certification. *Id.*; *see, e.g.*, ECF Nos. 40, 51, 186, 189. This extensive litigation record provided Class Counsel a clear understanding of the strengths and weaknesses of the claims and defenses, and it enabled them to carefully evaluate the risks and benefits of continued litigation versus settlement. *See In re Wireless Facilities*, 253 F.R.D. 607, 610 (S.D. Cal. Sept. 3, 2008) (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *White v. Experian Info. Sols., Inc.*, No. SACV05-1070 DOC (MLGx) (Lead Case), 2009 WL 10670553, at *13 (C.D. Cal. May 7, 2009) (same).

As the Court noted in its preliminary approval order, the Settlement was reached after arms-length negotiations overseen by highly experienced mediator Hunter Hughes, Esq., of Alternative Dispute Resolution. *See* ECF No. 227 ¶ 3. The involvement of a respected mediator supports a finding that the negotiations were conducted free of collusion and that the result is fair and reasonable. *See Kline*, 2016 WL 6026330, at *5 ("That the settlement was reached with the assistance of an experienced mediator further suggest that the settlement is fair and reasonable.") (citation omitted); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("[The] presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness."). Where, as here, the Settlement is the product of arms-length negotiations between experienced counsel with the guidance of a neutral mediator, it is entitled to a presumption of fairness. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). This factor therefore weighs strongly in favor of final approval of the Settlement.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

### 3. Experienced Class Counsel's Views Reinforces the Settlement's Reasonableness

"The recommendations of plaintiff['s] counsel should be given a presumption of reasonableness" when contemplating the approval of a proposed settlement. *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (citation omitted). Courts give weight to counsel's opinion because they are most familiar with the litigation and best able to evaluate its strengths and weaknesses. *See Carter v. Anderson Merch., LP*, No. EDCV 08-0025-VAP (OPx), 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

Here, Class Counsel has extensive experience litigating complex consumer class actions, including false advertising and mislabeling cases under California's UCL, FAL, and CLRA. *See* Sodaify Decl. ¶¶ 49-56 , Ex. B; Moon Decl., Ex. 1. That expertise, along with years of litigating this case, gave Class Counsel a clear assessment of the risks of trial and appeal, as well as the value of the injunctive and monetary relief achieved through settlement. Based on their informed judgment, Class Counsel concluded that the Settlement provides exceptional results for the Class by securing permanent labeling changes and establishing a $1.5 million non-reversionary common fund for direct consumer payments, while avoiding the significant risks, delay, and expense of continued litigation.

Given Class Counsel's experience and knowledge, their strong endorsement of the Settlement weighs heavily in favor of final approval.

### 4. No Government Participant

There is no governmental participant in this case. Therefore, this factor is neutral. *See Mathein v. Pier 1 Imps. (U.S.), Inc.*, No. 1:16-cv-00087, 2018 WL 1993727, at *8 (E.D. Cal. 2018) ("Because there are no separate governmental participants involved in the action, this factor is neutral in the court's analysis of the settlement agreement.") Digital Settlement provided CAFA notice to federal and state officials and did not receive any objections. Schey Decl. ¶¶ 10, 41.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

### 5.     The Favorable Reaction Of The Settlement Class Supports Final Approval

The reaction of the Settlement Class provides compelling support for final approval. The absence of objections or opt-outs, the strong participation rate, and the meaningful relief provided to claimants collectively demonstrate that the Settlement is fair, reasonable, and adequate under Rule 23(e).

After a thorough and independent review process, 23,742 claims were approved, covering 165,950 units of Product. Schey Decl. ¶ 41. Most notably, there were zero objections and zero opt-outs, meaning no Class Member expressed dissatisfaction with the Settlement or sought exclusion. *Id.* Courts have consistently recognized that the absence of objections and opt-outs is a powerful indicator of a settlement's fairness and adequacy, as it reflects both the Class's approval of the outcome and confidence in Class Counsel's efforts. See *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); see also *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 0.56% opt-out rate); *Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-cv-01828-H-LL, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (finding absence of objections supported approval); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:12-CV-05125 MRP (MANx), 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (finding 69 exclusions out of more than 50,000 notices supported approval). As the Ninth Circuit has observed, "the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.

The success of the notice program further underscores the fairness of the Settlement. The Court-approved digital notice program achieved millions of targeted impressions, resulting in 23,742 valid claims, all of which were independently verified by ClaimScore. Schey Decl. ¶¶ 14–15, 41; Heller Decl. ¶¶ 2-5, 44-50. In addition to total impressions, the internet notice campaign reached an estimated 10,791,832 unique individuals within the target audience. *Id.* This distinction between reach (unique individuals) and impressions (total exposures) confirms that the campaign

not only delivered repeated exposure but also reached a broad, unduplicated audience, ensuring that Class Members were effectively informed. *Id.*

The benefits to claimants are substantial. With preliminary claim estimates leaving excess money in the pot for distribution, each claimant received an upward adjusted approximate $2 per unit, which represents a 30% refund of the average purchase price—a meaningful recovery for a low-cost consumer product. Sodaify Decl. ¶ 10. Courts have routinely approved settlements offering comparable or even lower percentages. See *Marshal v. Monster Energy Co.*, No. CV-14-06311-MWF-PLA, 2016 WL 11758806, at *12 (C.D. Cal. Feb. 29, 2016) (finding a recovery of "10 to 37 percent of the average retail price" to be fair and reasonable); *Grady v. RCM Techs, Inc.*, No. 5:22-cv-00842 JLS-SHK, 2025 U.S. Dist. LEXIS 63454, at *21–22 (C.D. Cal. Apr. 1, 2025) (approving a settlement representing about 6% of plaintiff's maximum possible trial recovery).

Equally significant is the claims rate of approximately 7.5%, calculated based on estimated household purchases during the Class Period. Sodaify Decl. ¶ 10. This far exceeds participation rates typically seen in nationwide consumer product settlements. See *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (in a false advertising class action, noting a typical claims rate between 1 -2 percent); *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) ("[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent.").

Taken together—the highly effective notice program with significant reach, the anti-fraud claims verification process, the meaningful relief provided, the exceptionally high claims rate, and the complete absence of objections or opt-outs—the Class's response is nothing short of overwhelming. These factors collectively demonstrate that the Settlement easily satisfies Rule 23(e)'s requirements and strongly supports final approval.

## VII. CONCLUSION

Plaintiff respectfully requests that the Court enter an Order: (a) granting final approval of the Settlement, finding it fair, reasonable and adequate; (b) granting final certification of the Settlement Class; (c) awarding Plaintiff's requested attorneys' fees, costs, and service award; (d) directing the parties to undertake the obligations set forth in the Settlement Agreement; (e)

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

entering Final Judgment; and (f) maintaining jurisdiction over this matter for purpose of enforcing the Final Judgment.

Dated: September 11, 2025                    **CLARKSON LAW FIRM, P.C.**

By: */s/ Bahar Sodaify*
      Ryan J. Clarkson
      Bahar Sodaify

**MOON LAW APC**

By: */s/ Christopher D. Moon*
      Christopher D. Moon
      Kevin O. Moon

*Attorneys for Plaintiff and the Settlement Class*